ABC COATING COMPANY, INC., an
Oklahoma corporation, Appellant,

v.

J. HARRIS & SONS LIMITED, a
Canadian corporation, Appellee.

·No. 58149.

Supreme Court of Oklahoma.

June 3, 1986.

Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Inc., Richard A. Paschal, Fred S. Nelson, James E. Green, Jr., Tulsa, for appellant.

Rosenstein, Fist & Ringold, James W. Tilly, J. Douglas Mann, Gene L. Mortensen, Tulsa, for appellee.

DOOLIN, Vice Chief Justice.

Appellant ABC Coating Company, Inc. (ABC) appeals from a jury verdict denying ABC recovery in its action against J. Harris and Sons, Ltd. (Harris) based on several causes of action relating to an alleged mis-

appropriation of confidential business information. ABC assigns as error in the court below the failure to give several requested jury instructions, the giving of two erroneous instructions, and the trial court's refusal to include reference to confidential or technical information other than trade secrets in its Statement of the Case to the jury.

ABC is an Oklahoma corporation in the business of coating with epoxy resin steel reinforcing bars, known in the industry as "rebars." These coated rebars are used primarily for the reinforcement of concrete in highways, bridges, and elevated ramps, where they provide some protection from the corrosive effects of salt. Harris is a Canadian corporation with its principal office located in Toronto, Ontario, Canada, and is in the business of fabricating steel products of various types. Epoxicote Rebar, Inc., is a wholly owned subsidiary of Harris which is also in the business of coating rebars with epoxy resin. There was considerable dispute at trial over the remaining facts of this case.

ABC alleged that prior to 1978 it had developed a process of the epoxy coating of rebars that consisted of a specific series of items of equipment arranged in a particular combination, sequence and order, which was unique and not generally known in the rebar coating industry, and that this gave ABC an opportunity to gain an advantage over its competitors who did not know or use it. ABC further alleged that it maintained the process as its confidential business information and a trade secret.

ABC claimed that it was approached in 1978 by James Wilson, Vice President of Harris, for the purpose of acquiring for Harris the right to use ABC's process in a plant Harris was planning to build in Canada. Harris admitted that on August 3, 1978, Wilson toured ABC's plant in Tulsa, Oklahoma, with the permission of ABC, and stated at that time Harris had not made a final decision to enter the epoxy rebar business. Harris denied ABC's allegation that Wilson, prior to touring the plant, made false assurances to ABC that if Harris went into the rebar coating business it would do so with ABC on terms which Wilson allegedly had previously discussed with ABC's management. ABC also claimed that before it allowed Wilson to tour its plant, it obtained from him an oral promise to sign a written secrecy agreement at a later date, there being none of the usual forms available. The evidence is undisputed that on September 12, 1978, Wilson did in fact sign such an agreement.[1]

Harris admitted that after the first tour Wilson again contacted ABC by telephone and that Wilson and another Harris employee, Fred DeBoer, did tour the ABC plant on August 30, 1978, and obtained a rough estimate of the cost of construction of an epoxy rebar plant in Canada. ABC claimed that prior to this second tour Harris had decided against paying royalties to ABC and had determined to go into the rebar coating business. ABC alleged that Wilson concealed these facts and made other false representations before being granted the second tour of ABC's plant. Harris admitted that subsequent to the second tour Wilson called ABC to advise it that Harris had decided to build a plant without ABC's assistance.

1. RE: PROCESS FOR COATING REINFORCING STEEL WITH EPOXY RESIN.

This will confirm that you have received confidential information pertaining to ABC's process for coating reinforcing bars with epoxy resin. ABC's coating process is proprietary information, which we made available to you in connection with evaluating various epoxy resins which might be useful in the process, or for other business reasons with ABC.

The confidential information is that technical information relating to the coating process and disclosed to you during your inspection of our coating plant. It does not include information in your possession before the disclosure, or information that is now, or becomes part of a public knowledge or literature, not as result of any action or interaction on your part or is received by you from a third party without a secrecy agreement.

You agree not to use this confidential information and to take reasonable steps to prevent disclosure to third parties.

You agree not to disclose any of the confidential information to third parties unless they also have signed a secrecy agreement with ABC.

Please indicate your concurrence by signing the enclosed copy of this letter and returning it to us. The original is for your files.

ABC alleged, and Harris specifically denied, that the plant Harris eventually built is substantially identical to ABC's and utilizes ABC's process. ABC claimed Harris both used ABC's trade secret and confidential business information for Epoxicote Rebar, Inc., and disclosed same to ABC's competitors by means of a slide show presented to members of a trade association, and by distributing brochures which are descriptive of the Harris coating line. Harris denied ABC uses a coating process which is subject to protection by ABC as a trade secret and denied it wrongfully appropriated any manufacturing process from ABC or that ABC conferred any benefit upon Expoxicote Rebar, Inc.

We first consider ABC's claim that the trial court's failure to give ABC's requested instructions numbers 9, 10 and 11 constitute reversible error.

Harris claims ABC has waived any error in the trial court's refusal to give these instructions by failing to preserve any such error for the record as required by 12 O.S. 1981, § 578. This statute states:

A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to make objection thereto by dictating into the record in open court, out of the hearing of the jury, after the reading of all instructions, the number of the particular instruction that was requested, refused and is excepted to, or the number of the particular instruction given by the court that is excepted to.

■ During a two-day conference in chambers after the presentation of all evidence, the court and counsel for both parties discussed proposed jury instructions. The following exchange took place between the court and counsel for ABC:

THE COURT: I'm going to strike [ABC's proposed] 9, 10, and 11,....

MR. NELSON [counsel for ABC]: We, of course, would take exception to the refusal to give Instructions 9, 10, and 11.

We find no merit in Harris' contention that ABC did not fulfill the requirements of 12 O.S. 1981, § 578 with respect to these instructions.

ABC's requested instruction No. 9 reads:

You are instructed that it not essential to the existence of a trade secret process that the product by [sic] different than the products produced by other processes, provided the other elements of trade secret are present.

In support of its contention that this is a correct statement of law, ABC cites *Raybestos-Manhattan, Inc. v. Rowland*, 310 F.Supp. 993 (D.S.C.1969). That case involved an employee who developed a method of producing in a more efficient manner a product already manufactured by his employer. The new method was held to be a protectible trade secret.

■ We agree the requested instruction is a correct statement of law, however, the proposition it states can be inferred from other instructions which were given by the trial court. The trial court's Instruction No. 10 reads in part:

You are instructed that a trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for machine or other device, or a list of customers.

In the circumstances of the present case it might have been proper for the trial court to indicate explicitly to the jury that differentiation of product was not an essential prerequisite to the existence of a trade secret. However, given the evidence presented, that several other manufacturers produced coated rebars virtually identical to those produced by ABC, we are not persuaded that the absence of this instruction alone was so prejudicial as to constitute reversible error. "It is elementary that jury instructions are to be read as a whole and that if when so read they fairly submit the issues to the jury the verdict will not be disturbed." *Stills v. Mayor*, 438 P.2d 477, 481 (Okl.1968).

The following is ABC's requested instruction No. 10:

> You are instructed that among other things, reduced manufacturing costs may provide a competitive advantage under the definition of trade secret given above.

Again, although ABC's proposed instruction is a correct statement of the law of trade secrets, we also observe it states the obvious. The lack of need for such an instruction is demonstrated by the two cases cited by ABC in support of this instruction, *Atlantic Wool Combing Co. v. Norfolk Mills, Inc.*, 357 F.2d 866 (1st Cir. 1966) and *Heyden Chemical Corp. v. Burrell & Neidig*, 2 N.J.Super. 467, 64 A.2d 465 (1949), wherein each case the fact that reduced manufacturing costs constituted a competitive advantage is apparently assumed without explicit instruction.

■ In *Brown v. Reames*, 364 P.2d 906, 910 (Okl.1961), we said "[u]ndue prominence should not be given to particular phases of a case and the refusal to give an instruction which would so do is not error." Here, to have given the jury an instruction on a matter they were probably already aware of might well have influenced them to give undue weight to this factor.

We next consider ABC's requested instruction No. 11:

> You are instructed that a trade secret need not be complex. The fact that a process may be simple and easy to duplicate once seen does not mean that it cannot be a trade secret.

Instruction No. 10, given by the court, made ABC's requested instruction No. 11 unnecessary. Instruction No. 10, given by the trial court, and taken directly from the Restatement of Torts § 757, Comment b (1939), states in part:

> An exact definition of a trade secret is not possible. Some factors to be considered in determining whether given information is one's trade secret are:
>
> \* \* \* \* \* \*
>
> 6. The ease or difficulty with which the the information could be properly acquired or duplicated by others.

This Court held in Syllabus 7 of *Miller v. Hickman*, 359 P.2d 172 (Okl.19), that:

> "Where the trial court has submitted a case to the jury under proper instructions on its fundamental issues, and judgment within the issues and supported by competent evidence has been rendered in accord with the verdict, said judgment will not be reversed because of the court's refusal to give additional or more detailed instructions requested by the losing party, if it does not appear probable that such refusal has resulted in a miscarriage of justice or a substantial violation of one or more of said party's constitutional or statutory rights."

■ Instruction No. 10 given by the trial court properly and substantially covers the issue of the weight to be given by the jury to the existence or lack of existence of complexity in the process alleged by ABC to be its trade secret. In light of the instruction given, and considering the evidence in the record here, we conclude the trial court's refusal to give ABC's requested instruction could not have resulted in a miscarriage of justice.

■ ABC's requested Instruction No. 23 states:

> You are instructed that it is not a defense in an action of this kind that a trade secret process could have been developed independently without resort to information gained from a confidential relationship. The issue in this case is not how the defendant could have acquired such information, but rather how it did in fact acquire it.

ABC alleges the trial court committed reversible error in refusing to give ABC's requested Instruction No. 23. We do not agree. ABC's requested Instruction No. 23 conflicts with the express terms of the secrecy agreement signed by Wilson on September 12, 1978. The secrecy agreement excludes information "that is now or becomes part of the public knowledge or literature, not as a result of any action or interaction on your part or is received by you from a third party without a secrecy agreement." We find ABC's requested Instruction No. 23 is confusing and does not

state the law applicable to the present set of facts, and it was therefore not error for the trial court to refuse to give this instruction.

■ Finally we consider ABC's proposition that the trial court erred in refusing to instruct the jury that ABC could recover damages if Harris had misappropriated business information not rising to the level of a trade secret. ABC specifically objected to Instruction No. 16, given by the trial court:

> You are instructed that when the owner of a trade secret negotiates with another regarding the acquisition of the trade secret, a confidential relationship is created which imposes an obligation on the prospective purchaser not to use or disclose the trade secret in the event that negotiations are later abandoned. However, such a relationship cannot be created unless there is, in the first instance, a trade secret. If you find that ABC is the owner of a trade secret, and that the trade secret was communicated to Harris during negotiations between ABC and Harris for the purchase by Harris of ABC's trade secret, you are instructed that the law imposes a duty upon Harris to neither use nor disclose ABC's trade secret without the consent of ABC. Likewise, if you find that ABC did not possess a trade secret, you are instructed that the law imposes no duty upon Harris to refrain from the use or disclosure of any information revealed by ABC to Harris.

ABC argues that this language was misleading in that it suggests ABC could not recover under any theory in the absence of a trade secret. We disagree. This instruction expressly refers to use or disclosure of any information, it does not state that ABC could not recover under another cause of action. Indeed, the trial court instructed the jury on ABC's theory of fraud in Instructions 36–39. ABC further argues that Instruction No. 16 is erroneous because ABC was entitled to recover for disclosure by Harris of confidential information not rising to the level of a trade secret. ABC's theory is based on Restatement of Torts, § 759, which provides:

> One who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable for the harm caused by his possession, disclosure or use of the information.

Comment b to Section 759 describes the type of information contemplated within the meaning of Section 759:

> Examples of information, other than trade secrets, included within this Section are: the state of one's accounts, the amount of his bid for a contract, his sources of supply, his plans for expansion or retrenchment, and the like. There are no limitations as to the type of information included except that it relate to matters in his business. Generally, however, if the improper discovery of the information is to cause harm, the information must be of a secret or confidential character.

Comment C to Section 759 states in part that:

> Among the means of which are improper are theft, trespass, bribing or otherwise inducing employees or others to reveal the information in breach of duty. Fraudulent misrepresentations, threats of harm by unlawful conduct, wire tapping, procuring one's own employees or agents to become employees of the other for purposes of espionage, and so forth

We do not find reversible error in the trial court's giving Instruction No. 16 for two reasons. First, Restatement of Torts, § 759 makes clear that a necessary element of recovery under this theory is that the information be procured by improper means. The only improper means reflected in the record by which ABC alleges Harris procured information from ABC is by fraudulent misrepresentation. The jury was instructed on ABC's fraud cause of action, and returned a verdict for Harris. Thus, a major element of recovery under ABC's § 759 theory is absent.

A second flaw in ABC's § 759 theory is in its characterization of confidential information. The only alleged confidential information reflected in the record relates to

the process used by ABC in its plant; the particular sequence used by ABC in its rebar coating process. This process, while fitting well within the type of information lending itself to characterization as a trade secret, does not appear to take on a different or unique definition when characterized as confidential information. Indeed, the secrecy agreement signed by Harris' employee used the term "confidential information" rather than the term "trade secret." Under the present set of facts, the process used by ABC in its facility, which was the subject of the secrecy agreement signed by Harris' employee, is not distinguishable when characterized as either a trade secret or confidential information. An element of secrecy or confidential character is a requisite in either case. See Restatement of Torts, § 759, Comment b, supra.

In *Wasson v. Davis*, 283 P.2d 807, Syllabus 1, (Okl.1955) we said:

"Instructions must be considered as a whole and construed together, and while a single instruction standing alone may be subject to some criticism, yet, when the instructions taken together in their entirety, fairly submit the issues to the jury, the judgment of the trial court on the verdict of the jury will not be disturbed. It is not necessary that any particular paragraph of the instructions contain all the law of the case; it is sufficient if, when taken together and considered as a whole, they fairly present the law applicable to the issues in the pleadings upon which competent evidence has been introduced."

This Court has also held in numerous cases that where the instructions submitted by the trial court are sufficient to properly state the issues and the applicable law to the jury, "it is not error to refuse to submit to the jury requested instructions covering the entire case or any particular issue involved although the requested instructions state the law correctly." *City of Holdenville v. Griggs*, 411 P.2d 521 (Okl.1966) (citing *Midland Valley R. Co. v. Neeley*, 114 Okl. 277, 246 P. 859; *Schaff v. Daugherty*, 112 Okl. 124, 239 P. 922, cert. denied 270 U.S. 642, 46 S.Ct. 208, 70 L.Ed. 776). We find in the present case that when considered as a whole, the instructions given by the trial court fairly state the issues and the law applicable thereto, and any error which appears in the record is immaterial and harmless and does not affect the substantial rights of the appellant. 12 O.S. 1981, § 78.

AFFIRMED.

All Justices concur.