2006 OK 86

Teddy Neal HELDERMON and Sharon Joyce Heldermon, husband and wife and joint tenants, and Denny Lee Hight and Jana Harris Hight, husband and wife, as Co–Trustees of the Denny Lee Hight and Jana Harris Hight Family Trust, Plaintiffs/Appellees,

v.

Danny WRIGHT, Defendant/Appellant.

No. 100,709.

Supreme Court of Oklahoma.

Nov. 21, 2006.

Rehearing Denied Feb. 12, 2007.

Richard P. Propester, Day, Edwards, Propester & Christensen, Oklahoma City, OK, for defendant/appellant.

Travis A. Pickens, Travis A. Pickens, P.C., Mitchell, Davis, Klein & Pickens, Oklahoma City, OK, Tom A. Frailey, Frailey, Chaffin, Cordell, Perryman, Sterkel & McCalla, LLP, Chickasha, OK, for plaintiffs/appellees.

Robert D. Singletary, Assistant Attorney General, Oklahoma City, OK, for the Oklahoma Attorney General.

Dean A. Couch, Oklahoma City, OK, for amicus curiae Oklahoma Water Resources Board.

James R. Barnett, R. Thomas Lay, Kerr, Irvine, Rhodes & Ables, Oklahoma City, OK, for amici curiae Juniper Water Company, Inc., Oklahoma Gas and Electric Company, Co., Central Oklahoma Master Conservancy District, the Waurika Lake Master Conservancy District, the City of Ponca City, the City of Perry, Georgia–Pacific Corp., and Public Service Company of Oklahoma.

Craig B. Keith, Diane Lewis, Office of Municipal Counselor, Oklahoma City, OK, for amici curiae the City of Oklahoma City and Oklahoma City Water Utilities Trust.

Jeff L. Todd, Amy D. White, McAfee & Taft, Oklahoma City, OK, for amicus curiae the Oklahoma Farm Bureau Legal Foundation.

Diane Pedicord, Sue Ann Nicely, Oklahoma City, OK, John Vincent, Lawton, OK, for amicus curiae Oklahoma Municipal League, Inc.

Marjorie Galt, Oklahoma City, OK, H. Duane Riffe, Riffe & Associates, Broken Arrow, OK, for amicus curiae Oklahoma Rural Water Association.

TAYLOR, J.

## I. ISSUES

¶1 The dispositive issue in this case is whether under title 82, section 105.5, the plaintiffs should have given the Oklahoma Water Resources Board (OWRB) notice in the district court of this suit. We find that title 82, section 105.5 of the Oklahoma Statutes requires the OWRB be given notice and remand with directions to proceed accordingly.

## II. FACTS AND PROCEDURAL HISTORY

¶2 The defendant, Danny Wright, owns seventy-two acres of land in Caddo County. Wright began building a dam on an unnamed stream on this seventy-two acres without first applying to the OWRB for a water appropriation permit or seeking the OWRB's approval of the dam.[1] The unnamed stream

---

1. Title 82, section 105.9 requires a person seeking the beneficial use of water to apply to the OWRB for a water appropriation permit and to refrain from beginning construction for such purposes until the application is made. Title 82, section 110.5 and OWRB rule 785:25–5–1 require a person to submit an application to the OWRB before constructing a dam coming under its jurisdiction.

Title 82, section 105.9 provides:
Any person, firm, corporation, state or federal governmental agency, or subdivision thereof, intending to acquire the right to the beneficial use of any water shall, before commencing any

construction for such purposes or before taking the same from any constructed works, make an application to the Board, together with the filing fee authorized by law, for a permit to appropriate in the form required by rules and regulations established by the Board. "Beneficial uses include recreation, fish and wildlife." OWRB rule 785:20–1–2.

OWRB rule 285:25–5–1(a)(1) provides: "Any person who shall desire to construct enlarge, alter, remove or repair any dam under the Board's jurisdiction shall submit an application upon printed forms which will be furnished by the Board upon request."

flows northward in Caddo County, Oklahoma, through the properties of the Heldermons and the Denny Lee Hight and Jana Harris Hight Family Trust (together "plaintiffs"), as well as the Lee property,[2] and feeds into the South Canadian River. None of the parties assert that they have an OWRB permit to appropriate water from the stream, and therefore, we assume for purposes of this opinion both the plaintiffs' and the defendant's rights to the unnamed stream water are as riparians.[3]

¶ 3 When the plaintiffs discovered the construction, they filed a petition in the district court seeking to enjoin further construction on the dam. The trial court granted the plaintiffs a temporary injunction until Wright obtained an OWRB permit to construct the dam. Wright then filed an application with the OWRB for the approval of the dam. In his application, Wright stated the permanent pool storage capacity of the reservoir formed by the dam as 700 acre feet[4] with a surface area of fifty-four acres, or 75% of the seventy-two acres that he owns and the dam's purpose as "recreation, fish, and wildlife." The application also showed the reservoir is expected to yield a flow of 1000 gallons of water per minute.

¶ 4 Title 82, section 105.2(A) of the 2001 Oklahoma Statutes allows a riparian without an OWRB appropriation to store a maximum of a two-year domestic-use supply of water, and title 60, section 60 requires a riparian collecting the water for domestic use to provide for the continued natural flow of the stream. OWRB rule 785:25–3–7(a)(3),[5] in effect at the relevant time, provided the formula for determining Wright's two-year domestic-use water needs. Applying the formula, the OWRB determined Wright's "normal domestic water supply" for two years under regulation 785:25–3–7(a)(3) to be twenty-three acre feet of water. Pursuant to OWRB rule 785:25–3–7(a)(3), the OWRB required an additional release pipe be added to the proposed dam's construction at a point where all water in excess of the twenty-three acre feet could be released. After the OWRB issued the permit allowing Wright to build the dam with the additional pipe, the plaintiffs recast the issue as one to determine their and Wright's competing rights to the unnamed stream's water.[6]

¶ 5 In the pretrial order, the plaintiffs alleged (1) that they are entitled to "their historic, natural stream flow," [7] (2) that they are entitled to "reasonable use" of the stream water under *Franco–American Charolaise, Ltd. v. Oklahoma Water Resources Bd.,*[8] or (3) that they are entitled to "domestic use" of the stream water as defined by title 82,

---

2. At one time, Gary Earl Lee was a plaintiff in this suit but dismissed his claims before trial.

3. Wright seems to claim that he received an appropriation of 700 acre feet of water by virtue of the OWRB's approval of the dam. We cannot agree. The purposes, procedures, and criteria for obtaining an approval of plans for constructing a dam are distinct from those for obtaining a water appropriation permit. *See* 60 O.S.2001, § 60, 82 O.S.2001, §§ 105.2, 105.9,105.11,110.2; OWRB rules 785:20–7–2,:25–1–1,:25–5–3,:25–5–4,:25–9–1,:25–11–1 to:25–11–3.

4. One acre foot of water equals 43,560 cubic feet, 82 O.S.2001, § 105.28, which is 325,900 gallons.

5. OWRB rule 785:25–3–7(a)(3) provided: "The height of the outlet conduit may be such as to allow the owner to retain **a normal domestic water supply** of up to a maximum of fifty (50) acre-feet of storage per one hundred and sixty (160) acres of adjacent land owned or operated. Such storage must be designated as **domestic** in nature on the plans." (Emphasis added.)

Rule 785:25–3–7(a)(3) was deleted effective July 1, 2004. 21 Ok Reg 2625.

6. The plaintiffs did not seek an injunction under title 82, section 105.9 to require Wright to apply for a permit to appropriate water before beginning the dam.

7. The historic right to natural flow is the right to have water flow "as it was wont to run (currere solebat) without diminution or alteration. . . . 'Aqua currit et debet currere ut currere solevat,' is the language of the law." *United States v. Rio Grande Dam & Irrigation Co.,* 174 U.S. 690, 702, 19 S.Ct. 770, 43 L.Ed. 1136 (1899); *Chicago, R.I. & P. Ry. Co. v. Groves,* 1908 OK 5, ¶ 4,93 P. 755, 758. The phrase means: "Water runs, and ought to run, as it has used to run." Black's Law Dictionary 95 (5th ed.1979). The right to natural flow is not the right to a constant flow, but "the right to insist that the water shall continue to run as it has been accustomed. . . ." *Chicago, R.I. & P. Ry. Co.,* 1908 OK 5, ¶ 4, 93 P. 755 at 758.

8. 1990 OK 44, 855 P.2d 568.

section 105.1(2)[9] and the related OWRB rules and regulations. In the pretrial order, Wright contended (1) that under *Franco–American Charolaise*, so long as the plaintiffs fail to show that they are substantially harmed by his use of the water, his use is reasonable; (2) that the plaintiffs' rights to the stream water is limited to domestic uses as defined by title 82, section 105.1(2); and (3) that he should only be required to release the amount of water necessary to meet the plaintiffs' actual domestic needs. Both the plaintiffs and defendant asserted positions in the pre-trial order which bring the constitutionality of title 60, section 60 and Oklahoma Stream Water Use Laws[10] into question.

¶ 6 At trial, the plaintiffs presented expert evidence in support of a 500 to 750 gallon a minute release of stream water. Wright's expert witness posited that a release of 208 gallons a minute would be sufficient to meet downstream riparian's domestic uses. A letter to the OWRB in support of the dam application stated that "a valve will be regulated to provide 500 gallons per minute stream flow downstream."

¶ 7 The district court found that under title 82, §§ 105.1 and 105.1A and the OWRB rule 785:20–1–2 Wright must release a minimum of 515 gallons per minute of water for downstream riparian owners to have enough water for their domestic use. The Court of Civil Appeals found the trial court, by determining that 515 gallons per minute of flow was necessary to meet the plaintiffs' domestic needs, had considered uses exceeding those statuto-

rily allowed and ruled that title 82, §§ 105.1A and 105.2(A) are unconstitutional under *Franco–American Charolaise.*[11] The Court of Civil Appeals nonetheless affirmed the trial court's judgment on other grounds. This Court granted certiorari.

## III. *FRANCO–AMERICAN CHAROLAISE, LTD. v. OKLAHOMA WATER RESOURCES BOARD*

¶ 8 In 1990, this Court issued its opinion in *Franco–American Charolaise.*[12] This Court determined, among other things, (1) riparian land owners had vested common-law rights to the prospective reasonable use of stream water, even though the use was uninitiated, so long as they did not materially or substantially injure other riparian owners,[13] (2) the 1963 amendments to Oklahoma's stream water law[14] were constitutionally inadequate because they did not expressly abrogate this common-law riparian right,[15] and (3) to the extent the 1963 amendments[16] abolished or failed to preserve a riparian's common-law right in the prospective reasonable use of stream water without compensation, they violated article 2, section 24 of the Oklahoma Constitution.[17]

¶ 9 An analysis of the 1963 amendments can be found in *Franco–American Charolaise.*[18] For the purposes of this opinion, it is sufficient to understand that the 1963 amendments were the Legislature's initial attempt to provide a comprehensive system of stream water use by reconciling Oklahoma's two incompatible systems: the appropriative sys-

9. 82 O.S.2001, § 105.1(2) defines domestic use as "the use of water by a natural individual or by a family or household for household purposes, for farm and domestic animals up to the normal grazing capacity of the land and for the irrigation of land not exceeding a total of three (3) acres in area for the growing of gardens, orchards and lawns, and for such other purposes, specified by Board rules, for which de minimis amounts are used."

10. *Id.* §§ 105.1–105.32.

11. 1990 OK 44, 855 P.2d 568.

12. *Id.*

13. *Id.* ¶¶ 2, 14, 855 P.2d at 571, 575.

14. 1963 Okla. Sess. Laws 267, ch. 205.

15. 1990 OK 44, ¶ 22, 855 P.2d at 577. We discussed the relationship between statutory enactments and the common law in *Brown v. Ford*, 1995 OK 101, ¶ 10, 905 P.2d 223, 228–229. We said: "The body of our common law, which serves to *supplement* the corpus of statutory enactments, is powerless to *abrogate* the latter, either in whole or *in part.* Validly expressed legislative intent will must *always control* over contrary notions of the unwritten law." (Citations omitted.)

16. 1963 Okla. Sess. Laws 267, ch. 205

17. 1990 OK 44, ¶ 17, 855 P.2d at 577.

18. *Id.* ¶¶ 7–8, 855 P.2d at 572–573.

tem and the riparian system.[19] In an effort to remedy the constitutional infirmities set out in *Franco–American Charolaise*, the 1993 Legislature amended the Oklahoma Stream Water Use Law.[20] The 1993 amendment, unlike the 1963 amendments, explicitly abrogated the common law by expressing the legislative intent "to extinguish future claims to use water, except for domestic use, based only on ownership of riparian lands." [21]

## IV. PROCEEDINGS BEFORE THIS COURT

¶ 10 After this Court granted certiorari in this case, the Attorney General filed a brief, several entities were granted leave to file *amici curiae* briefs, and the defendant filed a supplemental brief arguing that the current Oklahoma Stream Water Use Law is constitutional. In their supplemental brief, the plaintiffs contend that the resolution of the constitutionality of the current Oklahoma Stream Water Use Law is unnecessary here, but they assert it is unconstitutional under *Franco–American Charolaise* and article 2, section 24 of the Oklahoma Constitution. After studying the briefs and the parties' con-

tentions, we are convinced the cause should be remanded to remedy procedural deficiencies in the proceedings below.

## V. TITLE 82, SECTION 105.5 OF THE 2001 OKLAHOMA STATUTES

¶ 11 We focus on the procedures articulated in title 82, section 105.5. Section 105.5 allows a person to bring suit in district court if the person's rights to use stream water as defined by title 60, section 60 are impaired.[22] Title 82, section 105.5 also provides: "[T]he Attorney General shall intervene on behalf of the state in any suit for the adjudication of rights to the use of water if notified by the [Oklahoma Water Resources] Board that the public interests would be best served."

¶ 12 Our primary goal in construing a statute is to ascertain the intent of the Legislature.[23] If the legislative intent is clear from a statute's plain and unambiguous language, this Court need not resort to rules of statutory construction.[24] If a statute's language is ambiguous, this Court may re-

19. *Id.* ¶ 7, 855 P.2d at 572–573; 1963 Okla. Sess. Laws 271–276, ch. 207. A history of the Oklahoma's stream water law and of the process leading up to the 1963 amendments can be found in an article written by Professor Joseph F. Rarick, the consultant of the Special Water Code Committee. Joseph F. Rarick, *Oklahoma Water Law, Stream and Surface in the Pre–1963 Period*, 22 Okla. L.Rev. 1, 9 (1969). In 1961, the Legislature directed the State Legislative Council to create this committee which, together with the OWRB, was charged with preparing a modern water code. *Id.* at 8.

20. 1993 Okla. Sess. Laws 1625, ch. 310 (now codified at 82 O.S.2001, 105.1A). In 1995, the Legislature further amended the Oklahoma Stream Use Law, which amendments are not relevant to the issues in this suit. 1995 Okla. Sess. Laws 425, ch. 112, § 1 (now codified at 82 O.S.2001, §§ 105.1, 105.11).

21. 1993 Okla. Sess. Laws 1625, ch. 310 (codified at 82 O.S.2001, 105.1A). Title 82, section 105.1A provides: "It is the intent of the Oklahoma Legislature that the purpose of Section 105.1 through Section 105.32 of this title is to provide for stability and certainty in water rights by replacing the incompatible dual systems of riparian and appropriative water rights which governed the use of water from definite streams in Oklahoma prior to June 10, 1963, with an appropria-

tion system of regulation requiring the beneficial use of water and providing that priority in time shall give the better right. These sections are intended to provide that riparian landowners may use water for domestic uses and store water in definite streams and that appropriations shall not interfere with such domestic uses, to recognize through administrative adjudications all uses, riparian and appropriative, existing prior to June 10, 1963, and to extinguish future claims to use water, except for domestic use, based only on ownership of riparian lands ...."

Even though a current Legislature cannot retroactively express the intent of a past Legislature, the 1993 amendment is an expression of the 1993 Legislature's intent in declining to repeal or further amend 60 O.S.1991, § 60 and 82 O.S. 1991, §§ 105.1–.32.

22. Title 60, section 60 addresses the right to use stream water for domestic uses and the right to use water as appropriated by the OWRB. The plaintiffs relied on the Oklahoma Stream Water Use Law in support of their contentions in the pretrial order. *See supra* ¶ 5.

23. *Twin Hills Golf & Country Club, Inc. v. Town of Forest Park*, 2005 OK 71, ¶ 6, 123 P.3d 5, 6.

24. *Id.*

sort to rules of statutory construction to determine the Legislature's intent.[25]

¶ 13 By providing in title 82, section 105.5 that the OWRB may notify the Attorney General of a suit to adjudicate stream water rights, the Legislature clearly anticipated and intended that the OWRB will have notice of such a suit even though the requirement and method for giving notice is omitted. This legislative intent is also discernible from the statewide comprehensive plan to oversee the use and protection of the public's interest in stream water.[26] In its effort to protect this public interest, the Legislature has provided for the OWRB's involvement in all aspects of stream water use from the Oklahoma Dam Safety Act [27] to appropriation of stream water.[28]

¶ 14 After the legislative intent is ascertained, this Court may supply the language to give the statute the force and effect that the Legislature intended.[29] Applying the language necessary to carry out the legislative intent, we construe title 82, section 105.5 to require the party seeking to adjudicate its rights to stream water, generally the plaintiff, to give the OWRB notice of the suit. The OWRB is then responsible for determining if the public interests would be best served by the Attorney General's intervention in the suit. Once the OWRB makes the determination of the public interests and gives notice to the Attorney General, the Attorney General must intervene in the suit.[30]

¶ 15 Generally, the public interests will best be served by the Attorney General's intervention in suits over rights to stream water.

[F]ew public interests are more obvious, indisputable, and independent of particular theory than the interest of the public of a state to maintain the rivers that are wholly within it substantially undiminished, except by such drafts upon them as the guardian of the public welfare may permit for the purpose of turning them to a more perfect use. This public interest is omnipresent wherever there is a state, and grows more pressing as population grows.[31]

## VI. CONCLUSION

¶ 16 Unquestionably, the Legislature intended that Oklahoma's interest in stream water be protected by the OWRB's involvement in suits to determine riparian or appropriative rights to use stream water. Because the Legislature intended that the OWRB be notified of suits involving rights to use stream water and that the State be allowed to intervene in a suit to protect its interest in preserving the waters within its borders, we find that the trial court erred when it proceeded to determine the rights of the parties without proof that the OWRB received notice of the pending suit. Having found the trial court procedure to be flawed, we save for another day the issue of the constitutionality of the Oklahoma Stream Water Use Law. The Court of Civil Appeals' opinion is vacated, the district court's judgment is reversed, and the case is remanded to the trial court for proceedings to be consistent with this opinion.

COURT OF CIVIL APPEAL'S OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; REMANDED.

¶ 17 ALL JUSTICES CONCUR.

25.  *Id.* ¶ 6, 123 P.3d at 7.

26.  60 O.S.2001, § 60; 82 O.S.2001, §§ 105.1–.32 (specifically § 105.1A).

27.  Oklahoma Dam Safety Act, 82 O.S.2001, §§ 110.7.

28.  82 O.S.2001, § 105.9.

29.  *Charlson v. State ex rel. Dept. of Public Safety,* 2005 OK 83, ¶ 10, 125 P.3d 672, 675.

30.  82 O.S.2001, § 105.5. The finding that the OWRB should have been notified of this suit and allowed to intervene at the trial level is consistent with 12 O.S.2001, §§ 2019 and 2024.

31.  *Hudson County Water Co. v. McCarter,* 209 U.S. 349, 356, 28 S.Ct. 529, 52 L.Ed. 828 (1908); *Jacobs Ranch, L.L.C. v. Smith,* 2006 OK 34, ¶ 57, 148 P.3d 842, 857 (discussing the state's interest in its water resources and the responsibility of the legislature to protect this interest).