2016 OK 55

**AMERICAN BIOMEDICAL GROUP, INC.; ABG Cattletraq, LLC; and James Burgess, Plaintiffs/Appellants,**

v.

**TECHTROL, INC. and William Ardrey, Defendants/Appellees.**

No. 113,978.

Supreme Court of Oklahoma.

May 17, 2016.

Murray E. Abowitz, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, Oklahoma, for Appellants.

James W. Tilly, The Tilly Law Firm, Tulsa, Oklahoma, for the Appellees.

TAYLOR, J.,

¶1 The question before this Court is whether Defendants supported their motion for summary judgment with undisputed, material facts sufficient to warrant the district court granting partial summary adjudication in their favor. We answer in the negative.

## I. STANDARD OF REVIEW

¶2 Partial summary adjudication, like summary judgment, settles only questions of law. *See Pickens v. Tulsa Metropolitan Ministry*, 1997 OK 152, ¶7, 951 P.2d 1079, 1082. The standard of review of questions of law is *de novo*. *Id.* Summary judgment or a partial summary adjudication will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that one party is entitled to judgment as a matter of law. *See id.* A partial summary adjudication will be re-

versed if the appellate court determines that reasonable people might reach different conclusions from the undisputed material facts. *See Runyon v. Reid,* 1973 OK 25, ¶ 15, 510 P.2d 943, 946.

¶ 3 Under this standard, we confine our review to the limited, undisputed, material facts. *Frey v. Independence Fire and Cas. Co.,* 1985 OK 25, ¶ 6, 698 P.2d 17, 20 ("The ruling on a motion for summary judgment must be rested on the record which is then before the court rather than on one that could have been assembled."). We do not consider Defendants' factual allegations included in their appellate paperwork which they failed to include as undisputed, material facts or support with evidentiary materials in the district court. *See id.*

## II. RELEVANT PROCEDURAL HISTORY

¶ 4 This legal battle began in 2006 when American Biomedical Group, Inc. (ABGI) and ABG Cattletraq, LLC (Cattletraq) filed a petition in the district court against Techtrol, Inc. and William Ardrey (Defendants); Defendants then filed a counterclaim. ABGI and Cattletraq dismissed their claims and causes of action against Defendants (without prejudice), leaving Defendants' counterclaim pending. Two years later, Defendants filed a petition in the same court against ABGI, Cattletraq, and James Burgess, their sole shareholder and CEO (Plaintiffs).

¶ 5 On March 16, 2009, Plaintiffs filed another petition in the district court, alleging that Defendants "wrongfully exercised dominion and control over plaintiffs' personal and intellectual property" and "willfully, deliberately and maliciously converted plaintiffs' personal and intellectual property" for their own benefit. Plaintiffs sought damages based on Defendants' unjust enrichment from the conversion. The district court consolidated the three cases. When the cases were consolidated, Defendants' counterclaim, Defendants' petition alleging abuse of process, and Plaintiffs' petition alleging causes of action for conversion and unjust enrichment remained pending before the district court.

¶ 6 On October 29, 2014, Defendants moved for summary judgment on Plaintiffs' claim for conversion, asserting that Oklahoma does not recognize a tort for conversion of intangible property, and for unjust enrichment, asserting Plaintiffs' claim was precluded because they had an adequate remedy at law for breach of contract. The statement of undisputed, material facts in Defendants' motion for summary judgment listed the pleadings filed and an excerpt from a deposition.[1] The only undisputed, material facts alleged by Defendants were (1) Plaintiffs filed a claim for the willful, deliberate, and malicious conversion of their personal and intellectual property and a claim for unjust enrichment caused by the conversion, and (2) part of Plaintiffs' claims are based on a nondisclosure agreement (NDA). Plaintiffs' response admits the excerpt is from a deposition and alleges twenty-one additional facts, with supporting evidentiary materials, that they contend may or may not be disputed and preclude summary judgment in Defendants' favor. Plaintiffs urged that (1) Oklahoma does recognize a cause of action for conversion of both personal and intellectual property which, in this case, is not preempted by the Oklahoma Uniform Trade Secrets Act (OUTSA), 78 O.S.2011, §§ 85–94, (2) they had pled facts sufficient to make a *prima facie* claim of misappropriation under the OUTSA, and (3) they do not have an

---

1. Rule 13(a) of the Rules for Districts Courts of Oklahoma, 12 O.S.2011, ch. 2, app., provides in part:

   A party may move for either summary judgment or summary disposition of any issue on the merits on the ground that the evidentiary material filed with the motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact. **The motion shall be accompanied by a concise written statement of the material facts as to** which the movant contends no genuine issue exists and a statement of argument and authority demonstrating that summary judgment or summary disposition of any issues should be granted. Reference shall be made in the statement to the pages and paragraphs or lines of the evidentiary materials that are pertinent to the motion. Unless otherwise ordered by the court, a copy of the material relied on shall be attached to or filed with the statement. (Emphasis added).

adequate remedy at law which would bar their claim for unjust enrichment.

¶ 7 Defendants and Plaintiffs each filed an additional brief, somewhat altering their arguments. Defendants submitted that the OUTSA preempts Plaintiffs' conversion and unjust enrichment claims, that Plaintiffs admitted that they had no contractual remedy under the NDA, and that Plaintiffs' admitted failure to identify its intellectual and personal property as confidential under the NDA barred relief under the OUTSA. Plaintiffs again contended that their claim for conversion of confidential, proprietary information is not displaced by the OUTSA. After the district court held a hearing, it granted Defendants' motion for summary judgment.[2]

¶ 8 Plaintiffs filed a petition in error, and the appeal was assigned to the Court of Civil Appeals. The Court of Civil Appeals affirmed the district court. This Court granted Plaintiffs' petition for certiorari review. This Court ordered the parties to file briefs addressing only the issues before this Court.

## III. ALLEGED FACTS

¶ 9 These alleged facts are informational to help clarify the dispute before this Court. Because the record does not show that these facts are undisputed, we do not rely on them in rendering our decision.[3] Plaintiffs contend that they developed a protocol to monitor and track cattle and a bolus containing technology to accomplish this task. In October of 2004, the parties entered into an oral agreement for Defendants to manufacture the bolus to Plaintiffs' specifications. About a month later, the parties entered into the written NDA. The NDA is part of the record and contains the following provision.

Subject to the limitations set forth in Section 2, all information disclosed by one party (the "Discloser") to the other party (the "Recipient"), which is labeled or marked "Confidential" or with some other similar proprietary legend shall be deemed

to be "Confidential Information." If Confidential Information is disclosed in oral form, the Discloser shall identify it as confidential at the time of disclosure and thereafter summarize it in writing and transmit such summary to the Recipient within thirty (30) days of the oral disclosure.

The NDA restricts the disclosure and use of confidential information, as defined above, including the restriction that the recipient shall "use such Confidential Information only to the extent required to accomplish the Purpose." The purpose was defined as "the purpose and evaluation and possible joint operations." After the parties entered into the NDA, Plaintiffs supplied Defendants with what they contend is confidential, proprietary information, including software, circuitry for biometric data, specifications, documents, drawings, chips, and thermistors, as well as tangible property.

¶ 10 After they entered into the NDA, the parties ended their business relationship. Since then, Defendants have manufactured and sold about 1,500 of the boluses. Plaintiffs alleged that at least some of the information Defendants used to manufacture and sell the boluses was Plaintiffs' confidential, proprietary information and tangible property not subject to the NDA.

## IV. ANALYSIS

¶ 11 Based on the parties' briefs on the issues before this Court, we determine the legal issues to be (1) whether Oklahoma recognizes a common-law action for misappropriation of intangible, proprietary property, (2) if so, whether the OUTSA displaces Plaintiffs' common-law claims, (3) whether information disclosed to Defendants by Plaintiffs without the "confidential" marking required by the NDA is subject to a common-law claim for conversion, (4) whether Plaintiffs have an adequate remedy at law which bars their claim for unjust enrichment, and (5) if

---

**2.** The district court certified the order to this Court pursuant to Title 12, Section 994 of the 2011 Oklahoma Statutes.

**3.** In Defendants statements of material fact, the ninth, the only one relevant here, is a quote from

a James Burgess' deposition showing that Plaintiffs are pleading a cause of action for conversion of personal and intellectual property and are seeking damages for unjust enrichment.

this Court finds the OUTSA displaces Plaintiffs' common-law claims, whether the decision should be applied prospectively only.[4]

### A. Common-law Claims

¶ 12 Conversion is defined by Oklahoma law as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 1987 OK 122, ¶ 9, 753 P.2d 1330, 1332. This definition does not include intangible property. It does require that "some form of wrongful possession or act of control over the property must occur." *Installment Fin. Corp. v. Hudiburg Chevrolet, Inc.*, 1990 OK 55, ¶ 10, 794 P.2d 751, 753. It is not necessary that the property wrongfully came into a party's possession, but only that the property was taken *or* appropriated without the owner's consent. *Fed. Nat'l Bank of Shawnee v. Lindsey*, 1935 OK 455, ¶ 12, 172 Okla. 30, 43 P.2d 1036, 1037; *Steenbergen*, 1987 OK 122, ¶ 9, 753 P.2d at 1332. Conversion of personal property does not require the property be obtained by wrongful means, but it must be either obtained or appropriated without the owner's consent. *Id.* Here, Defendants have failed to provide evidentiary support or even aver that they appropriated Plaintiffs' personal property without the Plaintiffs' permission, and Plaintiffs have not admitted this fact. Thus, partial summary adjudication in Defendants' favor was improper on this issue.

¶ 13 Oklahoma does not recognize the tort of conversion of intangible property in the same manner as it does for personal property. *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶ 14, 826 P.2d 603, 608 ("The general rule in Oklahoma is that only *tangible personal property* may be converted."). However, Oklahoma has recognized the tort of misappropriation of business information, an intangible, as stated in *ABC Coating Co. v. J. Harris & Sons Ltd.*, 1986 OK 28, ¶ 20, 747 P.2d 266, 270:

One who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information.

*Id.* (quoting the *Restatement (First) of Torts*, § 759 ("Procuring Information by Improper Means")). Under Section 759, improper means include, not only "theft, trespass, brib[ery], fraudulent misrepresentation, threats of harm by unlawful conduct," etc., but also "breach of contract, abuse of confidence or impropriety in the means of procurement." *Id.* (referencing *Restatement (First), of Torts*, § 757, Comment on Clause (a)).

¶ 14 The comment to the *Restatement (First) of Torts*, Section 757 explains that one who receives information that does not meet the definition of a trade secret and who is in a confidential relationship or obtains the information through improper means may be liable. The liability is based on the abuse of confidence or the impropriety in learning the secret, making wrongful procurement of the information a necessary element of misappropriation of confidential information, whether or not it rises to the level of trade secret. *ABC Coating Co.*, 1986 OK 28, ¶ 22, 747 P.2d at 270.

¶ 15 Oklahoma recognized the common-law tort of misappropriation of confidential business information in *Central Plastics Co. v. Goodson*, 1975 OK 71, ¶ 17, 537 P.2d 330, 333. *Central Plastics* treated trade secrets and confidential information as different forms of a business property and recognized that both have a substantial element of secrecy. *Id.* (citing *Aetna Bldg. Maint. Co. v. West*, 39 Cal.2d 198, 246 P.2d 11 (1952)) ("Trade secrets and confidential information, in order to be protected against disclosure by employees, must be the particular secrets of the employer as distinguished from the general secrets of the trade in which he is engaged."). In order to be protected, the property "must be the particular" owner's

---

4. Because of our resolution of the issues addressed in this opinion, we need not address other issues raised by the parties in their briefs to this Court. As the parties were directed to file briefs addressing only the issues in this appeal, we need not address those raised in the district court and not included in their briefs before this Court.

secrets, even though the owner may disclose it to others who are legally obligated to protect it, and not just secrets of the trade. *Id.* In *Central Plastics,* because the information was not secret to the owner, there was no wrongdoing in the procurement. *Id.*

¶16 In *ABC Coating Co.,* the plaintiff, a company in the steel-rebar coating business, alleged that the defendant company fraudulently obtained the plaintiff's trade secret and confidential business information and disclosed it to others. 1986 OK 28, ¶22, 747 P.2d at 270. The jury returned a verdict on the fraud issue in favor of the defendant. *Id.* The plaintiff, having failed to prove the element of procurement by improper means, was not entitled to recover. *Id.* It made no difference to the *ABC Coating* Court whether the plaintiff's coating process was a trade secret or confidential information. *Id.* ¶23, 747 P.2d at 271. As with *ABC Coating,* the cases on which Defendants rely can be viewed as there was no cause of action if the information was not confidential or, if the information was confidential, it was not wrongfully procured.

■ ¶17 Plaintiffs contend that only information marked confidential is subject to the NDA. Therefore, Plaintiffs submit that any information given to Defendants which was not marked as confidential is not subject to the NDA, Defendants' use of unmarked information cannot be brought as a breach of contract, and the information is subject to a claim for conversion. The NDA is subject to our laws governing contracts. A contract's terms are to be given their plain meaning. 15 O.S.2011, § 160; *Lucas v. Bishop,* 1998 OK 16, ¶11, 956 P.2d 871, 874. The NDA explicitly requires that any informational disclosures be marked "confidential" and, if orally disclosed, it be identified as confidential and a summary of the information be sent within thirty days of disclosure. The NDA limited a recipient's use of the information properly identified as confidential. The NDA clearly expresses the parties' intent that only the use of information properly marked or identified as confidential be re-

stricted. It does not address the use of intangibles which may not be information or the use of tangibles.

¶18 The NDA controls the parties' use of information, whether or not marked confidential. Plaintiffs cannot benefit from their own failure to comply with the NDA and mark information as confidential before sharing it with Defendants since the Defendants' procurement of the information would not be wrongful. However, the NDA does not control use of intangibles which are not information nor does it control use of tangibles. Nonetheless, Defendants' quest for summary judgment must fail because they have failed to support their argument with undisputed facts backed by evidentiary materials.[5]

### B. Preemption

¶19 Defendants urge that it matters not whether Oklahoma recognizes a common-law tort for misappropriation of property not meeting the definition of trade secret because this cause of action is displaced by the OUTSA. The OUTSA defines trade secret as

information, including a formula, pattern, compilation, program, device, method, technique or process, that:

a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

78 O.S.2011, § 86(4). The OUTSA affords protection for trade secrets and consequences for their misappropriation. *Id.* §§ 87–89. These include (1) injunctions, *id.* § 87, (2) damages of actual loss and for unjust enrichment or damages of a reasonable royalty, *id.* § 88, (3) exemplary damages of twice the amount of actual damages if the misappropriation is willful and malicious, *id.*

---

**5.** Defendants assert that Plaintiffs admitted in their response to summary judgment that they failed to mark certain information as confiden-

tial. We decline to read Plaintiffs' argument in their response in such broad terms as to constitute an admission.

§ 88, and (4) in certain cases, an award of attorney's fees. *Id.* § 89.

¶ 20 The OUTSA's exemptions found in Section 92 are the crux of this issue. Section 92 provides:

A. Except as provided for in subsection B of this section, the Uniform Trade Secrets Act displaces conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.

B. The Uniform Trade Secrets Act does not affect

1. contractual remedies, whether or not based upon misappropriation of a trade secret; or

2. other civil remedies that are not based upon misappropriation of a trade secret; or

3. criminal remedies, whether or not based upon misappropriation of a trade secret.

¶ 21 Section 92(A) calls for the OUTSA to displace this state's conflicting tort law providing civil remedies for misappropriation of a trade secret, except as provided in Section 92(B). Section 92(B) allows civil remedies for torts that are not based on misappropriation of a trade secret. Although one goal of the uniform act was to make states' trade secret laws uniform, states have not been consistent in its construction. Some courts have taken the view that similar trade secret acts create two sets of business information, one that is protected by the acts and one that has no protection either under the acts or the common-law. *Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 904 A.2d 652, 664 (2006). Other courts have determined that similar acts are unambiguous and, by their clear language, do not displace a common-law conversion claim of business information not meeting the definition of trade secrets. *Miller UK Ltd. v. Caterpillar Inc.*, 859 F.Supp.2d 941, 947 (N.D.Ill.2012). Because of the inconsistency in the uniform act's construction, we are not compelled by the uniformity goal to follow any particular jurisdiction.

¶ 22 In construing a statute, our goal is to determine the Oklahoma Legislature's intent, and not the intent of other state legislatures. *Heldermon v. Wright*, 2006 OK 86, ¶ 12, 152 P.3d 855, 859. If the legislative intent is clear from a statute's plain and unambiguous language, this Court need not resort to rules of statutory construction. *Id.* When a statute's language is unambiguous, its words will be given their obvious and ordinary meaning and will be followed without additional inquiry. *Okla. City Zoological Trust v. State ex. rel. Public Emps. Relations Bd.*, 2007 OK 21, ¶ 6, 158 P.3d 461, 464.

¶ 23 By its unambiguous language, Section 92(A) of the OUTSA displaces conflicting tort claims only for "misappropriation of a trade secret." It does not displace tort claims for information not meeting this definition. Section 92(B)(2) leaves in place torts not based on misappropriation of a trade secret. If the Legislature had intended to displace a cause of action for misappropriation of business information not falling within the statutory definition of trade secret, it could have done so. The Legislature chose not to include business information not meeting its statutory definition of trade secret in Section (92)A's displacement provision, and we are bound by the Legislature's decision.

¶ 24 This construction is in keeping with the intent of the uniform act. The comment to Section 7 of the UTSA (Oklahoma's Section 92), states that the uniform act "is not a comprehensive statement of civil remedies," and "does not apply to a duty imposed by law that is not dependent upon the existence of competitively significant secret information." This language indicates that the uniform act's authors did not intend the displacement provision to apply to the common-law cause of action for misappropriation of business information not rising to the level of a trade secret.

¶ 25 In further support of this construction, Title 12, Section 2 of the 2011 Oklahoma Statutes states:

The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma....

Pursuant to this provision, this Court will not presume an abrogation of the common law from a statutory provision. *Brashier v. Farmers Ins. Co., Inc.*, 1996 OK 86, ¶ 8, 925 P.2d 20, 24 (overruled in part on other grounds by *Barnes v. Okla. Farm Bureau Mut. Ins. Co.* 2000 OK 55, 11 P.3d 162). A statutory abrogation of the common law must be expressed in clear and plain language. *Id.* "Where the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute declares it to be exclusive." *Id.* Section 92 of the OUTSA does not clearly express that it abrogates or displaces the common law tort of misappropriation of business information not qualifying as a trade secret under the OUTSA. Quite the contrary, Section 92 and the comments thereto exempt this common-law tort from its displacement provision.

¶ 26 Like other alleged facts in this case, neither party has alleged facts supported by evidentiary material that show at least some, if not all of the property at issue falls outside the OUTSA's definition of trade secret.[6] Because this determination is necessary to a finding that Plaintiffs' causes of action are displaced by the OUTSA, partial summary adjudication was improper as to issues based on determination of this fact.

### C. Unjust Enrichment

¶ 27 During various times during this litigation, Defendants have asserted that Plaintiffs cannot bring an unjust enrichment claim because Plaintiffs have an adequate remedy at law under the NDA or because Plaintiffs failed to mark certain property as confidential under the NDA. Unjust enrichment arises "from the failure of a party to make restitution in circumstances where it is inequitable," or one party holds property "that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. "One is not unjustly enriched, however, by retaining benefits involuntarily ac-

quired which law and equity give him absolutely without any obligation on his part to make restitution." *McBride v. Bridges*, 1950 OK 25, ¶ 8, 202 Okla. 508, 215 P.2d 830, 833. Further, a party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract. *Krug v. Helmerich & Payne, Inc.*, 2015 OK 74, ¶ 6, 362 P.3d 205, 209.

¶ 28 To the extent that Defendants can show that information was "involuntarily acquired" under the NDA with no obligation to make restitution, they are not subject to a claim for unjust enrichment. Again, they have failed to make this showing as to all the property at issue here which would entitle them to partial summary adjudication on this issue.

### V. CONCLUSION

¶ 29 Defendants failed to show that they were entitled to summary judgment. Throughout their arguments before the district court and this Court, Defendants rely on allegations which they have failed to allege as undisputed in their motion for summary judgment, which have no supporting evidentiary materials, and which Plaintiffs contest or which Plaintiffs have not admitted.

¶ 30 The Court of Civil Appeals' opinion is vacated. The judgment of the district court is reversed. The cause is remanded for further proceedings.

COURT OF CIVIL APPEALS' OPINION VACATED; REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

CONCUR: COMBS, V.C.J.; and KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, and GURICH, JJ.

NOT PARTICIPATING: REIF, C.J.

---

**6.** Defendants argue that the OUTSA preempts claims for conversion of tangible property as well as intangible because the tangible property is intertwined with the intellectual property such that the tangible property has no separate value. Again, Defendants fail to offer any support that this allegation is true and uncontested.