1998 OK 125

**ARBUCKLE ABSTRACT COMPANY, an Oklahoma Corporation, Appellee,**

v.

**Clifton SCOTT, Auditor and Inspector for the State of Oklahoma, Royce Moser, County Clerk of Carter County, Oklahoma and Louise Harris, Court Clerk of Carter County, Oklahoma, Defendants, and Carter County Abstract Company, Inc., an Oklahoma Corporation, Appellant.**

No. 86,652.

Supreme Court of Oklahoma.

Dec. 15, 1998.

As Corrected Feb. 2, 1999.

Summers, V.C.J., Simms and Wilson, JJ., concurred in result.

Richard C. Ford and Robert G. McCampbell of Crowe & Dunlevy, Oklahoma City, Oklahoma and Darryl F. Roberts, Ardmore, Oklahoma for Appellee.

C. Wayne Litchfield, Oklahoma City, Oklahoma and D. Michael Hisey, Ardmore, Oklahoma for Appellant.

Gary L. Henry, District Attorney for Carter County, Ardmore, Oklahoma for Defendants Court and County Clerks of Carter County.

Jerry L. Hemry, Hemry & Hemry, P. C., Oklahoma City, Oklahoma for Amicus Curiae Oklahoma Land Title Association.

LAVENDER, J.

¶ 1 The following question is presented for our review: did the District Court in and for Carter County err by failing to dismiss a declaratory judgment suit brought by appellee, Arbuckle Abstract Company (AAC), a corporation desiring to become a licensed abstract company in Carter County? We hold the suit should have been dismissed because AAC failed to exhaust its administrative remedies before the Oklahoma Auditor and Inspector ( A & I), the State official responsible for regulating the abstract industry pursuant to the Oklahoma Abstractors Law (OAL), 74 O.S.1991, § 227.10 et seq. and

no actual justiciable controversy existed under the Oklahoma Declaratory Judgments Act (DJA), 12 O.S.1991, § 1651 et seq.[1]

## PART I. PROCEDURAL HISTORY AND POSITIONS OF PARTIES.

¶ 2 On the same day in December 1993 AAC: 1) applied to the A & I for a permit to build an abstract plant in Carter County and 2) filed a petition in the Carter County District Court pursuant to the DJA. The DJA suit asserted the fact of its permit application, claimed a question existed as to the completeness of the Clerks' records/files, and requested a judgment the records/files were complete as required by Oklahoma law.[2] Sued as defendants were the two Clerks and the A & I. Appellant, Carter County Abstract Company (CCAC), an already licensed abstract company in Carter County, was allowed to intervene in the suit as a party defendant.

¶ 3 The Clerks' answer to the DJA suit agreed a question existed as to the completeness of their respective records/files and they assented to determination of the issue by the trial court. However, neither in any pleading we have been provided or at the eventual trial, did the two Clerks' directly take any definitive position that their records were or were not complete for purposes of the OAL. To the extent a definitive position can be gleaned from the appeal record, they seem to have sided with AAC's stance on the issue. That stance was that the records/files should be considered *prima facie* complete, i.e. they should be presumed complete until evidence of a contrary nature shows otherwise.[3]

---

1. All references to the Oklahoma Abstractors Law (OAL), 74 O.S.1991, § 227.10 et seq. and the Oklahoma Declaratory Judgments Act (DJA), 12 O.S.1991, § 1651 et seq. are to the 1991 Oklahoma Statutes. We also note our decision the DJA suit should have been dismissed makes it unnecessary to decide an issue raised by *amicus curiae*, Oklahoma Land Title Association, to the effect the trial court's judgment was in part void because it amounted to an untimely modification of an earlier decision the trial court had rendered in the case.

2. The petition contained two other causes of action: 1) for a declaration indexes and records placed in computer systems qualified as an "oth-

er system of indexes" as required by the OAL, § 227.15 and 2) that Arbuckle Abstract Company's (AAC) contemplated use of unlicensed personnel to construct its abstract plant, under supervision of licensed abstractors, would comply with Oklahoma law and the rules and regulations of the State Auditor and Inspector (A & I) governing abstractors. Both causes were dismissed without prejudice by AAC in February 1994.

3. We note the two Clerks did appear to acknowledge certain records/files were missing from their offices that at one time had been recorded in their offices. However, as we view the lower court record presented on appeal, they never really advocated any firm viewpoint in opposi-

¶4 Both CCAC and the A & I moved to dismiss on the basis of a lack of subject matter jurisdiction. CCAC argued the A & I had exclusive initial authority to determine the adequacy of the Clerks' records for purposes of the OAL and that AAC failed to exhaust its administrative remedies before seeking court intervention. It also set out the fact it had protested AAC's permit application pursuant to A & I administrative rules,[4] and the pendency of the administrative proceeding. One ground raised by CCAC in its administrative protest was that AAC would be unable to build an abstract plant in compliance with the OAL using the records of the Clerks' Offices because the records of those offices—according to CCAC—were incomplete, as they did not contain "all documents or matters which legally impart constructive notice of matters affecting title to real property, any interest therein or encumbrances thereon, which [were] filed or recorded in the offices of the county [ ] and [ ] court clerk[s] . . . ." § 227.11(2).

¶5 The dismissal motion also asserted the DJA suit did not involve an actual justici-

able controversy because no action, either affirmative or negative, had been taken by the A & I on AAC's then pending permit application or any issue encompassed within its own administrative protest of that application. In essence, CCAC took the position AAC was attempting to obtain a preemptory ruling from the trial court that the Clerks records were adequate—i.e. sufficiently complete—so that when copied or otherwise reflected in its proposed abstract plant, the plant would contain all those records necessary to meet the statutory definition of abstract plant contained in § 227.11(2) of the OAL.[5] The A & I's dismissal motion basically raised the same grounds as CCAC, including an argument AAC was attempting to preempt/prejudge issues committed by the OAL for initial resolution to the A & I.

¶6 Prior to any ruling on the dismissal motions, AAC filed in the district court case a dismissal without prejudice as to the A & I. Further, after CCAC's protest of AAC's permit application was set for hearing before the A & I Abstractor Registrar/Hearing Examiner[6], AAC withdrew its permit application,

tion to that taken by AAC on whether such records/files were of a nature that it would be necessary for an abstract plant to contain the missing records to be in compliance with the OAL. The Clerks have filed no appellate briefs.

4. A & I Rule 80:1–3–1(a), Oklahoma Administrative Code (1996) allows a person desiring to protest issuance of a permit, license or certificate relating to the abstract business, to file a verified complaint with the A & I setting out the facts upon which the protest is based. Unless otherwise noted, the administrative rules we cite in this opinion were in effect in December 1993, when AAC applied for a permit before the A & I.

5. Section 227.11(2) of the OAL defines abstract plant as follows:
As used in the Oklahoma Abstractors Law: . . . .
2. "Abstract plant" shall consist of a set of records in which an entry has been made of all documents or matters which legally impart constructive notice of matters affecting title to real property, any interest therein or encumbrances thereon, which are filed or recorded in the offices of the county clerk and the court clerk in the county for which such abstract plant is maintained. Such records shall consist of:
a. an index in which notations of or references to any documents that describe the property affected are included, according to the property described or in which copies or briefs

of all such documents that describe the property affected are sorted and filed according to the property described, which is compiled from the instruments of record affecting real property in the county offices and not copied or reproduced from any county index; and
b. an index or files in which all other documents, pending suits affecting real property and liens, except ad valorem taxes and special assessments, are posted, entered, or otherwise included, according to the name of the parties whose title to real property or any interest therein or encumbrances thereon is affected, which is compiled from the instruments of record affecting real property in the county offices and not copied from any county index.

6. As we read the Oklahoma Administrative Code, Title 80, which contains the rules of the A & I concerning the abstract business, the Abstractor Registrar is an employee of the A & I's Office that oversees the day-to-day operations of that Office concerning abstractors and the abstract business. We also note § 227.12(A) of the OAL empowers the A & I to employ hearing examiners to conduct hearings subject to rules, regulations and orders of the A & I, and pursuant to Rule 80:1–3–5(c) a member of the A & I's staff is an individual that may be appointed a hearing examiner by the A & I. The current version of Rule 80:1–3–5(c) is found in the 1997 Supplement of the Oklahoma Administrative Code, Rule

causing the A & I's Office to cancel the scheduled hearing, as the permit application was no longer pending. Although not part of the appellate record in this case, AAC has informed this Court in its September 8, 1997 petition for writ of certiorari that it again filed an application for a permit to build an abstract plant with the A & I (apparently in 1996), that CCAC has again opposed this most recent application, and, apparently, the most recent application and CCAC's opposition to it are pending and awaiting the outcome of this case.

¶ 7 AAC's position on the dismissal issue can be summarized as follows: by virtue of OKLA. CONST. art. 7, § 7, which grants to State District Courts unlimited original jurisdiction of all justiciable matters, it is the District Court of Carter County that has the authority to decide the question of the completeness or incompleteness of the Clerks' records/files, that it was not attempting to short circuit or preempt any authority of the A & I, but was merely seeking to have a preliminary decision by the district court of the completeness issue prior to expending any money constructing an abstract plant. As seen by its appellate submissions, AAC sought such a determination for the following reason(s)—if the trial judge found the rec-

ords/files of the Clerks incomplete for OAL purposes because said Offices were missing documents or records affecting title to real property in the County (i.e. documents necessary for inclusion or reflection in its proposed abstract plant), AAC then could have undertaken to either replace the missing records prior to pursuing its permit application or, if it would have been impossible to replace them for some reason, AAC would have abandoned its desire to become an abstract company in the County and not gone forward with a permit application before the A & I to build an abstract plant. AAC's arguments assume the A & I has no authority to decide the issue (i.e. the completeness or incompleteness of the Clerks' records for OAL purposes) and that the A & I would merely grant it a permit without ruling on the issue, notwithstanding this record shows the exact same issue was encompassed within CCAC's protest to AAC's initial permit application and the matter had been set for administrative hearing before the Abstractor Registrar/Hearing Examiner.[7]

¶ 8 The trial judge declined to dismiss, concluding he had jurisdiction of the declaratory judgment suit by virtue of 67 O.S.1991, §§ 1[8], 2[9], 3[10], 20[11] and 21[12], provisions of our

80:1-3-5 having been the subject of certain amendments effective in June 1997.

7. AAC also appeared to argue in the trial court, even if it had no intention to become a licensed abstract company, it, like any other citizen of Carter County had a right to obtain a ruling on the status of the Clerks' records/files. AAC's apparent view was anyone—e.g. a "landman", attorney, litigant or any person residing in Carter County—that might have need of the records at some time in the future, was authorized to bring a DJA suit to obtain the same relief it was requesting, i.e. a global determination of the completeness or incompleteness of the Clerks' records. We need not consider this argument because AAC has abandoned it by failing to raise it in any appellate brief.

8. 67 O.S.1991, § 1 provides:

Whenever the record of any judgment or decree, or other proceeding, of any court of this state, or any part of the record of any judicial proceeding or any other public records, shall have been lost or destroyed, any person interested therein may, on application by petition in writing, under oath, to the proper court of the county wherein the records were kept, on showing, to the satisfaction of

such court, that the same has been lost or destroyed without fault or neglect of the person making such application, obtain on order from such court, authorizing such defect to be supplied by a duly certified copy of such original record, where the same can be obtained; which certified copy shall, thereafter, have the same effect as such original record would have had, in all respects.

9. 67 O.S.1991, § 2 provides:

Whenever the loss or destruction of any such record or part thereof shall have happened, and such defect cannot be supplied, as provided in the next preceding section, [ ] any person interested therein may make a written application to the proper court of the county wherein the records were kept, verified by affidavit, showing the loss or destruction thereof; that certified copies thereof cannot be obtained by the person making such application; the substance of the record so lost or destroyed; that such loss or destruction occurred without the fault or neglect of the person making such application, and that the loss or destruction of such record, unless supplied, will or may result in damage to the person making such application; and thereupon said court shall cause said

law that set up procedures for restoration of lost or destroyed records of a court or county clerk. The case, thus, proceeded to trial and at trial, AAC relied on a presumption the records and files of the Clerks' Offices were *prima facie* complete. However, evidence was adduced that certain records were missing from one or the other Offices. After the parties presented their evidence, the trial judge entered a judgment to the effect that although both Clerks' Offices did have miss-ing records, the records found missing from the County Clerk's Office—that had been identified by CCAC—did not affect title to real property in Carter County, the trial judge apparently agreeing with AAC's position that although the records related to real property in Carter County (e.g. the missing records contained 1890s era conveyances of Carter County real property) they did not currently affect title to that property and

application to be entered of record in said court, and due notice of said application shall be given that said application will be heard by said court. And if, upon such hearing, said court shall be satisfied that the statements contained in said written application are true, said court shall make an order, reciting the substance and effect of said lost or destroyed record; which order shall be entered of record in said court, and have the same effect which said original record would have had if the same had not been lost or destroyed, so far as concerns the person making such application, and the persons who shall have been notified, as provided in this section. The record, in all cases where the proceeding was in rem, and no personal service was had, may be supplied upon like notice, as nearly as may be, as in the original proceeding. The court in which the application is pending may, in all cases in which publication is required, direct, by order, to be entered of record, the form of the notice, and designate the newspaper in which the same shall be published.

10. 67 O.S.1991, § 3 provides:

In case of the destruction by fire or otherwise of the records, or any part thereof, of any district court, the judge of such court may proceed upon his own motion, or upon application in writing of any party in interest, to restore the records, papers and proceedings of his court relating to the estate of deceased persons, including recorded wills and wills probated or filed for probate in said court; and for the purpose of restoring said records, wills, papers or proceedings, or any part thereof, may cause citations to be issued to any and all parties to be designated by him, and may compel the attendance in court of any witnesses whose testimony may be necessary to the establishment of any such record or part thereof, and the production of any and all written or documentary evidence which may be by him deemed necessary in determining the true import and effect of the original record, will, paper or other document belonging to the files of said court; and may make such orders and decrees establishing said original record, will, paper, document or proceeding, or the substance thereof, as to him shall seem just and proper; and such judge may make all such rules and regulations governing the said proceedings for the restoration of the record, will,

paper, document or proceeding pertaining to said court, as in his judgment will best secure the rights and protect the interests of all parties concerned.

11. 67 O.S.1991, § 20 provides:

It shall be the duty of the judge of the county court, or the judge of the district court of any county in this state, in which any public records have been lost or destroyed to examine into the state of the records in such county, and in case he finds any abstracts, copies, minutes or extracts from said records existing after such destruction as aforesaid, and finds that said abstracts, copies, minutes or extracts were fairly made before the destruction of the records by any person, in the ordinary course of business, and that they contain a material and substantial part of said records, and, that such abstracts, copies, minutes and extracts tend to show a connected chain of title to the land in said county, the said judge shall certify the facts found by him in respect to such abstracts, copies, minutes and extracts, and said judge, shall cause all evidence produced as to said abstract books to be reduced to writing, and shall cause all such evidence to be spread of record, as a part of the order of said court.

12. 67 O.S.1991, § 21 provides:

Upon filing of a certificate of such county or district judge with the clerk of the county, the county commissioners may, with the approval of the judge of the county or district court, of the county purchase from the owners thereof such abstracts, copies, minutes or extracts, or such part thereof as may tend to show a connected chain of title to the land in such county, including all such judgments and decrees as form a part of any such chain of title, paying therefor such fair and reasonable price as may be agreed upon between them and such owners; the amount thus agreed to be paid for such abstracts, copies, minutes or extracts shall be paid by such county in money or in bonds, to be issued by said county as the county commissioners may determine, or such county commissioners may, with said approval, procure a copy of said abstracts, copies, minutes and extracts, instead of the original, to be paid for in like manner.

were, therefore, not necessary to be reflected in a proposed abstract plant. However, no express declaration was made that the Clerks' records were complete for purposes of the OAL or, for that matter, for purposes of any other statutory law.

¶9 CCAC appealed, re-urging the DJA suit was subject to dismissal for failure of AAC to exhaust administrative remedies and lack of an actual justiciable controversy. The Court of Civil Appeals (COCA) affirmed in part, reversed in part and remanded for further proceedings, deciding part of the trial court's judgment involved answering a question within the initial decision-making authority of the A & I. We previously granted certiorari and now reverse the trial court's judgment and vacate the COCA's memorandum opinion because AAC failed to exhaust its administrative remedies and there was no actual justiciable controversy presented by the DJA suit, as we explain below.

## PART II.  LEGAL ANALYSIS.

### A. AAC FAILED TO EXHAUST ITS ADMINISTRATIVE REMEDIES.

¶10 What AAC was attempting to obtain from the trial court via its DJA suit was one of the following: 1) a judicial declaration the records/files of the Clerks' Offices contained all those documents required to be reflected in its proposed abstract plant as that term is defined at § 227.11(2) of the OAL or, 2) if documents were missing that were required to be reflected in an abstract plant under the OAL, it sought to have the trial court identify each such document so it could have the information necessary to make a decision as to whether it would either a) take the steps necessary to replace the missing document(s), or b) abandon its desire to become a licensed abstract company in Carter County, because for some reason it would be impossible to replace or restore the required missing documents.  In order to grant the relief sought by AAC it was incumbent on the trial court to grapple with two basic issues, one legal and the other factual: 1) what records/documents filed in a district court clerk and county clerk office are required to be reflected in an abstract plant by virtue of the OAL definition of abstract plant contained in § 227.11(2)—a legal question concerning the

meaning of § 227.11(2) and 2) whether any required records/documents were missing from the Clerks' Offices—a factual question. The same questions were put at issue in the administrative permit process initiated by AAC via CCAC's protest of that application, but the administrative process did not culminate in a final decision because AAC withdrew its permit application before any ruling could be made by the A & I. Both questions, in our view, are committed for initial resolution to the A & I.

■ ¶11 Pursuant to the OAL, the A & I is the State officer with regulatory authority over the abstracting business in Oklahoma. *See generally Denney v. Scott*, 1992 OK 134, 848 P.2d 1142; *Abstracts of Oklahoma, Inc. v. Payne County Title Co.*, 1992 OK 13, 825 P.2d 1334.  The A & I is "charged with the duty of administering the [OAL]" and is "the sole governmental entity, state, county or municipal, authorized to regulate and issue certificates of authority, permits, and abstract licenses in [Oklahoma]." 74 O.S.1991, § 227.12(A).  Section 227.12(A) also provides that in carrying out its powers and responsibilities in administering the OAL, the A & I is subject to the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.1991, § 250 et seq., as amended, which includes, of course, Article II of the OAPA, the provisions thereof governing individual proceedings/hearings in individual cases. Section 227.22(A) of the OAL further requires that the A & I may not refuse to issue a permit to build an abstract plant without affording a hearing.  The A & I is also authorized to promulgate rules and regulations and to make orders necessary to implement the OAL's provisions. § 227.13(1).  The A & I has promulgated extensive rules under this authority which are found in the Oklahoma Administrative Code (OAC), Title 80, including Rule 80:1–3–1(a) that allows a protest to a permit application and a hearing thereon.

¶12 Acquisition of a permit to build an abstract plant is the initial step in the administrative process that must be followed by a person or entity desiring to engage in the business of abstracting in a particular coun-

ty.[13] A permit holder is allowed free access to any instruments affecting real property in any city, county or state office, which allows the ability to search for and copy those recorded instruments necessary for inclusion in an abstract plant. After an abstract plant is completed by a permit holder, the next step is to obtain a certificate of authority which is defined at § 227.11(3) as "the authorization to engage in the business of abstracting in a county in this state, granted to a person, firm, corporation, or other entity, by the State Auditor and Inspector."

¶ 13   In the instant case, after AAC filed its permit application with the A & I, a protest to that application was filed by CCAC pursuant to A & I Rule 80:1–3–1(a), partly on the basis AAC would be unable to build an abstract plant in compliance with the OAL using the records of the Clerks' Offices because the records of those offices—according to CCAC—were incomplete, as they did not contain "all documents or matters which legally impart constructive notice of matters affecting title to real property, any interest therein or encumbrances thereon, which [were] filed or recorded in the offices of the county [ ] and [ ] court clerk[s]...."   § 227.11(2).[14] Rather than litigate any legal issue concerning the proper interpretation of § 227.11(2) or any factual question as to what required documents might be missing from the Clerks' Offices within the confines of the administrative process it had initiated, AAC sought to litigate any such questions related to the adequacy of the Clerks' records for OAL purposes in a DJA case and then withdrew its permit application.   This was an improper course of action because it was required to exhaust available remedies before the A & I and,

without any decision of the A & I on these matters, there was no actual justiciable controversy presented to the trial court in the DJA case.[15]

¶ 14   Plainly, an administrative officer clothed with the duty of regulatory authority over a class of business enterprises—such as the A & I has been granted over the abstract industry—is empowered in the first instance to interpret the provisions of the statutory scheme it is duty-bound to administer.   This Court has expressly recognized that administrative agencies, like courts, are often called upon to interpret the statutes they are charged with administering and that the presence of a legal question alone is not a sufficient reason to by-pass administrative avenues of relief.   *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n,* 1988 OK 117, 764 P.2d 172, 181.   The OAPA itself requires state agencies to state their conclusions of law when deciding individual cases [§ 312] and a court reviewing an administrative agency decision is authorized to reverse, modify or remand an agency decision if legal errors of the agency prejudice the substantial rights of an appealing party [§ 322].

¶ 15   Exhaustion of administrative remedies is generally a prerequisite for resort to the courts.   *Lone Star Helicopters, Inc. v. State,* 1990 OK 111, 800 P.2d 235, 237.   It is also understood that exhaustion of administrative remedies is a simple rule of orderly procedure and is designed to allow administrative bodies to perform their statutory functions free from premature and unnecessary interference by preliminary court litigation.   *Speaker v. Board of County Commissioners,* 1957 OK 100, 312 P.2d 438, 441.

---

13.   The word permit is defined in the OAL at § 227.11(4) and "is the authorization to build an abstract plant in a specific county".

14.   In essence, CCAC's position on the merits of the adequacy of the records for OAL purposes is that numerous documents affecting title to real property in Carter County, interests or encumbrances thereon, that were recorded in one or the other of the two Clerks' offices, no longer exist in said offices, so that those offices would not afford AAC a complete source of documents to build an abstract plant as defined in § 227.11(2).

15.   We note that AAC's dismissal of the A & I from its DJA suit makes it plain AAC was not challenging the validity or applicability of any rule of the A & I in the DJA action pursuant to 75 O.S.1991, § 306 of the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.1991, § 250 et seq., as amended.   This is manifest because pursuant to § 306(B) the agency that has promulgated a challenged rule must be made a party to any such action.

Further, issues. falling within an agency's original cognizance usually may be considered by a district court only when it is entertaining an administrative appeal. *State ex rel. Oklahoma Department of Mines v. Jackson,* 1997 OK 149, 950 P.2d 306, 310; *Ricks Exploration Co. v. Oklahoma Water Resources Bd.,* 1984 OK 73, 695 P.2d 498, 502; See also *Dawson v. Department of Transportation,* 480 F.Supp. 351, 352 (W.D.Okla.1979) (declaratory judgment suit may not be used to preempt and prejudge issues that are committed to an administrative agency for initial decision).

¶16 The exhaustion doctrine, when it is applicable, does not require merely initiation of prescribed administrative remedies, but that such remedies be pursued to their final outcome before judicial intervention is sought. *Martin v. Harrah Independent School District,* 1975 OK 154, 543 P.2d 1370, 1374. The rationale behind the doctrine of exhaustion of administrative remedies is grounded on various policy considerations. *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n, supra,* 764 P.2d at 180. Exhaustion normally allows the administrative agency to exercise discretion or apply its expertise under the statutory scheme it is charged with administering, it is generally more efficient to allow the administrative process to progress forward without court intervention, the agency may discover and correct its own errors in the administrative process, and, in fact, a litigant may succeed in vindicating his rights in that process so that it may never be necessary for the courts to intervene. *Id.* Generally, it is only where administrative remedies are unavailable, ineffective or futile to pursue that such remedies may be bypassed. *Robinson v. State,* 1996 OK ·145, 916 P.2d 1390, 1393; *Lone Star Helicopters, Inc. v. State, supra,* 800 P.2d at 237.

¶17 Here, although the A & I does not have statutory authority under the OAL to replace or restore missing records of a district court clerk or county clerk that may be deemed necessary to be contained or reflected in an abstract plant under the OAL, the A & I clearly has the authority to decide the questions sought to be litigated by AAC

in its DJA action, questions that concerned the adequacy of the Clerks' records for OAL purposes. Thus, AAC is mistaken when it asserts the A & I is not empowered to answer the questions it sought to litigate in its DJA action. It is also mistaken, at least at this stage, in assuming the A & I was merely going to grant its permit without resolving the questions raised by it in the DJA case and by CCAC in the administrative process. Before AAC withdrew its permit application, the A & I's Office had set CCAC's protest of that permit application for administrative hearing, and we have been presented with no viable argument that the questions involved in AAC's DJA action would not have received some type of resolution in the administrative process had AAC not abandoned that process prematurely.

¶18 Our decision that AAC's DJA case should have been dismissed for failure to exhaust administrative remedies does not impinge on the district court's authority as a court of unlimited jurisdiction as AAC seems to assert. OKLA. CONST. art. 7, § 7(a), which grants to State District Courts unlimited original jurisdiction of all justiciable matters provides in pertinent part: "The District Court shall have unlimited original jurisdiction of all justiciable· matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute." Merely because in a different context (e.g. in a quiet title action where missing court or county clerk records are necessary to resolve some issue in the action) a district court would have authority to inquire into the status of lost or destroyed records and to use the mechanisms in Title 67 to replace or restore them, does not mean a district court may preempt or prejudge issues committed for initial resolution to an administrative agency, like the issues presented in AAC's DJA case.

· ¶19 It is the A & I that has been statutorily granted regulatory power over the abstract industry and the initial authority to decide the questions AAC and CCAC sought to resolve concerning the completeness or adequacy of the Clerks' records for purposes of the OAL. This recognition does not impinge on any authority of the district court

and, of course, should AAC be aggrieved by any final order of the A & I's Office issued in an individual proceeding covered by the OAPA, AAC would be authorized to seek judicial review of such an order under § 318 of the OAPA. *See Double LL Contractors, Inc. v. State,* 1996 OK 30, 918 P.2d 34, 37 (parties aggrieved by an administrative agency's final order issued in the context of an individual proceeding are afforded a cause of action for judicial review by § 318 of the OAPA). Further, depending upon the ultimate resolution by the A & I's Office of issues posed in the administrative process, the provisions of Title 67 concerning replacement or restoration of records/documents would be available to AAC for invocation at an appropriate time. In sum, AAC's DJA case should have been dismissed by the trial court for failure to exhaust administrative remedies.

## B. THE DJA CASE WAS ALSO SUBJECT TO DISMISSAL BECAUSE IT PRESENTED NO ACTUAL JUSTICIABLE CONTROVERSY.

■ ¶ 20 Before a DJA suit may properly be entertained by a district court the case must present an actual controversy. 12 O.S. 1991, § 1651. The controversy must be between parties having opposing interests, which interests are direct and substantial, and the matter must involve an actual, as distinguished from a possible, contingent or potential dispute. *Gordon v. Followell,* 1964 OK 74, 391 P.2d 242, 242–243 *First Syllabus.* AAC's DJA case failed to meet this requirement.

¶ 21 In the first instance, there was no real dispute between AAC and the Clerks as to whether their records/files were adequate or complete for OAL purposes. As noted in **PART I,** *supra,* the Clerks took no firm or definitive position as to the adequacy of their records for OAL purposes that was at odds with any position taken by AAC. There was, therefore, no actual, existing controversy presented between AAC and the Clerks sufficient to invoke jurisdiction under the DJA.[16]

¶ 22 Although, of course, there was, and is, a dispute between AAC and CCAC as to the adequacy or completeness of the records for OAL purposes, such dispute in the circumstances of this case is insufficient to meet the actual controversy requirement of the DJA. In that AAC withdrew its permit application, no determination of the A & I was made on it or upon the protest CCAC had filed concerning that application and no definitive rulings by the A & I have been rendered—either legal or factual—on the adequacy of the Clerks' records for OAL purposes. In such a situation, this Court and the trial court are left merely to speculate what rulings might possibly be made by the A & I as to his interpretation of § 227.11(2), what required records the A & I might find missing from the Clerks' Offices or how such rulings, or others that may be made by the A & I in the administrative process, might prejudice AAC in its quest to gain a permit to build an abstract plant in Carter County, or to eventually become a licensed abstract business there. Under these circumstances, it is improper to invoke declaratory judgment jurisdiction because no actual justiciable controversy presently exists. *See Mistletoe Express Service v. United Parcel Service, Inc.,* 1983 OK 27, 674 P.2d 1, 10.

## CONCLUSION

¶ 23 Notwithstanding AAC's assertion the DJA suit was not an attempt to circumvent the administrative process or preempt any issue within the initial decision-making authority of the A & I, the DJA suit did

---

16. AAC's apparent argument contained in its certiorari submissions that a sufficient actual controversy existed with the Clerks because by rule of the A & I affidavits of completeness of the county records from court and county clerks are mandated in the permit application process and it was a controversy over these affidavits that led to the DJA proceeding is without merit. Rule 80:10–3–9(b)(1) does not require affidavits of completeness from the relevant clerks, but affidavits from them of "completeness or incompleteness of the county records." (emphasis added) There is no evidence in this record the A & I refused to proceed on AAC's permit application because of a lack of affidavits from the Clerks. As noted previously, a hearing had been set before the Abstractor Registrar/Hearing Examiner on CCAC's protest to the permit application, a protest that in part raised the completeness issue, but the administrative process was abandoned by AAC when it withdrew its permit application.

circumvent the administrative process and preempt issues committed to the A & I for initial resolution. Therefore, the suit should have been dismissed for failure of AAC to exhaust its administrative remedies. In the circumstances shown by this record, the DJA case was also subject to dismissal because it failed to present an actual existing justiciable controversy.

¶ 24 Accordingly, the Court of Civil Appeals' memorandum Opinion is **VACATED**, the trial court judgment is **REVERSED AND THE MATTER IS REMANDED TO THE TRIAL COURT WITH DIRECTION TO DISMISS.**

¶ 25 KAUGER, C.J., HODGES, HARGRAVE, OPALA and WATT, JJ., concur.

¶ 26 SUMMERS, V.C.J., SIMMS and ALMA WILSON, JJ., concur in result.

