OSCN Found Document:TAYLOR v. OKLAHOMA WATER RESOURCES BOARD

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 TAYLOR v. OKLAHOMA WATER RESOURCES BOARD
2015 OK CIV APP 99
Case Number: 112145
Decided: 11/05/2015
Mandate Issued: 12/04/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 99, __ P.3d __

 

JENNIFER BENITSCHECK TAYLOR, Plaintiff/Appellee,
v.
OKLAHOMA WATER RESOURCES BOARD, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
SEQUOYAH COUNTY, OKLAHOMA

HONORABLE J. JEFFREY PAYTON, TRIAL JUDGE

THE TRIAL COURT'S ORDER IS REVERSED AND THE MATTER IS REMANDED TO THE OKLAHOMA WATER RESOURCES BOARD FOR FURTHER PROCEEDINGS

Fourth Scoufos, SCOUFOS LAW OFFICES, P.C., Sallisaw, Oklahoma, and Robert D. Kellogg, MORICOLI AND SCHOVANEC, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee
Jerry Barnett, GENERAL COUNSEL, Jonathan Allen, WATER RESOURCES BOARD, Oklahoma City, Oklahoma, for Defendant/Appellant
Kelly F. Monaghan, Lori Gilliard, HOLLOWAY & MONAGHAN, Tulsa, Oklahoma, for Amicus Curiae Sequoya County Conservation District

DEBORAH B. BARNES, JUDGE:

¶1 The Sequoyah County Conservation District (SCCD) filed a condemnation action seeking a permanent easement on property owned, in part, by Plaintiff/Appellee Jennifer Benitscheck Taylor (Taylor) so that it could perform rehabilitation work on a dam. Taylor then filed a petition before Defendant/Appellant Oklahoma Water Resources Board (the OWRB) asserting that SCCD's proposed construction activities are based on the assumption that the dam is a "high hazard" dam, and further asserting that the dam has never been so classified, and that it should not be so classified "today."

¶2 In its order, the OWRB denied Taylor's petition based on the fact that litigation is ongoing between Taylor and SCCD in the condemnation action. The OWRB stated, in effect, that because SCCD filed the condemnation action "in order to rehabilitate the dam to meet high hazard design criteria," and because that litigation is ongoing, the OWRB was prevented under its own regulations from ruling on Taylor's petition. The OWRB, therefore, denied Taylor's petition without holding an evidentiary hearing or otherwise addressing the merits of Taylor's petition.

¶3 Taylor appealed the OWRB's order to the trial court, which found, among other things, that the dam at issue "was never properly categorized as a 'high-hazard' dam . . . [,] and that it is not a 'high-hazard' dam pursuant to OWRB's rules" because there is "no evidence to that effect . . . ."

¶4 Based on our review, we reverse the trial court's Order and remand this case to the OWRB to address Taylor's petition. The issues raised in Taylor's petition should be addressed by the OWRB, rather than in the first-instance by the trial court.

BACKGROUND

¶5 In June 2009, SCCD filed a petition seeking to condemn certain property so that it could perform rehabilitation work on a dam (i.e., on a "flood-water retarding structure") located in Sequoyah County, Oklahoma.[1] SCCD asserted that "[i]t is necessary . . . to perform certain rehabilitation work" on a dam located on property owned by, among others, Taylor. SCCD asserted the dam "no longer meets minimum performance standards mandated by the [OWRB] . . . ."

¶6 SCCD acknowledged in the petition that previously, upon learning of SCCD's proposed project, Taylor, among other property owners, "commenced a declaratory judgment action against [SCCD] . . . seeking a determination that the Rehabilitation Work exceeded the scope of [SCCD's two] Easements" that had been granted to it several decades before by the predecessor in interest of the property. SCCD admitted the trial court, in that action, found the proposed work on the dam was not within the scope of the easements,[2] and enjoined SCCD from undertaking the proposed work.

¶7 On appeal from the trial court's order in the declaratory judgment action, a separate Division of this Court "affirmed as modified" in an opinion (Case No. 106,875) issued in April 2010.[3] In the April 2010 Opinion, the Court explained that "[b]etween 1961 and 1968, as part of a multi-county flood control and water conservation program, SCCD's predecessors obtained the easements from the Landowners' predecessors in title. SCCD is now the undisputed owner of the easements involved in this action." The Court further explained that, "[b]ased upon the passage of time, further development in the area, and reclassification of the . . . structures as potentially hazardous, SCCD determined that the flood water structures were in need of rehabilitation."

¶8 The Court further explained that, generally, an easement may not be expanded or applied "in a manner not originally intended by the parties at the time of its grant." Because it was undisputed SCCD's proposed rehabilitation work went beyond the scope of the old easements, the Court concluded the trial court did not err in awarding judgment to the landowners.

¶9 However, the Court agreed with SCCD's argument that the trial court erred in issuing an injunction preventing SCCD from undertaking the proposed projects under any circumstances. The Court modified the trial court's injunction, concluding that SCCD is "enjoined from undertaking the rehabilitation projects on the property of Landowners unless and until SCCD obtains sufficient easements allowing it to do so."

¶10 After the trial court enjoined SCCD from undertaking the proposed work, and during the pendency of the appeal from that ruling, SCCD filed the June 2009 petition, discussed above, commencing the condemnation action. Because SCCD could not perform the work under the old easements, SCCD sought to acquire the necessary easements through condemnation.[4] As stated in SCCD's Resolution attached to the June 2009 petition, SCCD "determined that for the sake of the human health and safety of the Oklahoma citizens living downstream [from the dam], the rehabilitation of the . . . Structure should be commenced at this time." SCCD requested that the trial court, in the condemnation action, appoint three commissioners to determine the just compensation to which the landowners, including Taylor, are entitled. Commissioners were subsequently appointed, and they issued their report in October 2009 estimating just compensation to be $35,000.

¶11 In November 2009, defendants, including Taylor, filed an objection to the report of the commissioners. They asserted, among other things, that SCCD did not specifically set forth in the June 2009 petition the area to be condemned. Defendants stated they "object to the Report of Commissioners[;] request that [SCCD] be required to specifically identify the property being condemned[;] and request that this matter be set for hearing." Following a hearing on the matter, the trial court sustained defendants' objection and ordered that SCCD "set out with specificity" the property to be condemned, and "specify the type of easement and the terms of the easement for both the temporary easement area and the permanent easement area."

¶12 In January 2011, SCCD filed its amended petition in the condemnation action. SCCD sought "to acquire a perpetual easement" and stated that "[t]he operation and maintenance . . . for which this perpetual easement is being acquired includes the repair, modification, alteration, rehabilitation, upkeep, upgrade, improvement, construction, reconstruction, decommission and inspection" of the dam, including "the spillways," and "pool (water storage) areas." SCCD attached to the amended petition a description of the real property required for the easement.

¶13 On April 29, 2011, Taylor filed a "Petition for Declaratory Ruling" before the OWRB, and, a few days later, on May 2, 2011, filed a motion in the condemnation action seeking to stay the condemnation proceedings. The full title of Taylor's petition before the OWRB is "Petition for a Declaratory Ruling Regarding the Hazard Class of [the Dam]." Taylor asserted in the petition that SCCD's proposed work on the dam is "based on [SCCD's] own assumption that [the dam] is a high hazard dam." Elsewhere in the petition Taylor stated that "SCCD's proposed construction activities are based on [the dam] being classified as a high hazard dam." In this regard, Taylor attached a copy of SCCD's application to the OWRB, filed in October 2006, seeking permission to undertake the proposed work on the dam. In this application, the hazard classification of the dam is marked "High" (rather than "Low" or "Significant"). Also attached is a copy of a letter from a representative of the OWRB stating that SCCD's "application for rehabilitation of a dam . . . was considered and approved by the [OWRB] at its regular monthly meeting" in November 2006.

¶14 Taylor asserted in her petition, however, that the dam "is not a high hazard dam," and that it "is not a high hazard dam under the OWRB's dam safety regulations." Taylor asserted, in addition, that the dam "was constructed in 1966 as a low hazard dam, and the OWRB has not conducted or offered to conduct any proceeding to alter that classification." Taylor further asserted that the dam should not be "classified as a high hazard dam today because, pursuant to the OWRB dam safety rules, there are no downstream structures that are likely to result in death if there was a breach. Therefore, [it] does not meet the criteria for a high hazard classification."[5] Taylor asserted, among other things, that the proposed work "will needlessly interfere with the use and enjoyment of the Homestead [of Taylor] and her family," and she requested that the OWRB "declare that the high hazard classification that has been alluded to in various documents is not applicable to [the dam]."

¶15 In June 2011, the OWRB issued its order in response to Taylor's petition. In its order, the OWRB denied Taylor's petition based on the fact that litigation is ongoing between Taylor and SCCD in the condemnation action. The OWRB cited § 785:1-5-6 of the Oklahoma Administrative Code (OAC), which provides, in part, as follows:

Petitions for declaratory rulings [before the OWRB] shall be subject to the following requirements: . . . (3) No declaratory rulings shall be made where the question presented involves a matter subject of pending applications, administrative hearings or litigation or generally scheduled for determination by means other than through a declaratory ruling by the Board.

OAC § 78:1-5-6 (1991). The OWRB stated, in effect, that because "[SCCD] filed [the condemnation action] . . . in order to rehabilitate the dam to meet high hazard design criteria," and because that action was ongoing, the OWRB could not make a ruling on Taylor's petition. In July 2011, Taylor appealed the OWRB's order to the trial court and, in August 2011, the OWRB filed a response asserting, pertinent to this appeal, that the OWRB's decision should be affirmed because its determination that it could not make a ruling was valid under § 785:1-5-6(3) and free from prejudicial error.

¶16 The trial court did not rule on the administrative appeal until March 2013. Meanwhile, the condemnation action continued despite the filing of the motion to stay proceedings by Taylor. On August 8, 2011, the commissioners filed an amended report assessing the value of the taking at $77,000, and on August 25, 2011, defendants (including Taylor) filed an objection to the amended report of the commissioners.

¶17 In January 2012, an order was filed consolidating the two cases. The condemnation action, Case No. CS-09-633, and the administrative appeal from the OWRB's order, Case No. CV-11-65, were "consolidated in to case number CS-09-633 . . . ." SCCD then filed in the Oklahoma Supreme Court an application to assume original jurisdiction and a petition for writ of mandamus and writ of prohibition in an effort to, among other things, enjoin the trial court from consolidating the condemnation action with the administrative appeal. However, in May 2012, the Supreme Court denied SCCD's application to assume original jurisdiction.

¶18 Due in part to scheduling conflicts, a hearing on the administrative appeal was not held in the trial court until March 2013.[6] As stated above, the trial court, in its Order filed in August 2013, found that the dam "was never properly categorized as a 'high-hazard' dam . . . [,] and that it is not a 'high-hazard' dam pursuant to OWRB's rules" because there is "no evidence to that effect . . . ." From this Order, OWRB appeals.

STANDARD OF REVIEW

¶19 Under the Oklahoma Administrative Procedures Act (OAPA), 75 O.S. 2011 & Supp. 2014 § 250, et seq.,[7] the district court and this Court apply the same review standard for agency actions; except in certain cases of alleged irregularities in procedure before the agency, the review is confined to the record made before the administrative tribunal. City of Tulsa v. State ex rel. Pub. Employees Relations Bd., 1998 OK 92, ¶ 12, 967 P.2d 1214; 75 O.S. 2011 §§ 321-322. An administrative agency's decision must be affirmed if it is found to be a valid order and the administrative proceedings are free from prejudicial error to the appealing party. City of Tulsa, ¶ 12; § 322. However, this Court

may set aside or modify the order [of the administrative agency], or reverse it and remand it to the agency for further proceedings, if [this Court] determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.

75 O.S. 2011 § 322(1) (footnote omitted). "The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue." § 322(2).

ANALYSIS

¶20 The OWRB acknowledges in its order that SCCD filed the condemnation action "in order to rehabilitate the dam to meet high hazard design criteria." However, the OWRB declined to rule on Taylor's petition, in which she contested the high-hazard classification of the dam, because the condemnation action was ongoing. As set forth in the OWRB's order, and as quoted above, § 785:1-5-6(3) of the OAC provides, in pertinent part, as follows: "Petitions for declaratory rulings [before the OWRB] shall be subject to the following requirements: . . . (3) No declaratory rulings shall be made where the question presented involves a matter subject of pending . . . litigation . . . ." Implicit in the OWRB's order, therefore, is a finding that the high-hazard classification of the dam was "a matter subject of pending . . . litigation" in the condemnation action. Because, according to the OWRB, the issue regarding the high-hazard status of the dam was pending in the condemnation action, the OWRB concluded it was prevented from ruling on that and related issues by § 785:1-5-6(3).

¶21 We, first of all, agree with the OWRB's argument that, on appeal from the OWRB's order declining to address or rule on Taylor's petition, the trial court "exceeded the scope of review" under the OAPA by addressing the issues that OWRB declined to address.[8] We further agree that the sole issue which the trial court should have addressed is whether the OWRB correctly concluded it could not rule on Taylor's petition because the petition raised issues that were the subject of pending litigation.

¶22 However, we disagree with the OWRB's argument that this error requires that we reverse the Order of the trial court and affirm the order of the OWRB. As stated above, the district court and this Court apply the same review standard for agency actions. Although the trial court "exceeded the scope of review," we will review the OWRB's action in this matter and determine whether it erred in concluding it could not rule on Taylor's petition. If the OWRB erred in this regard, then the case should be remanded to the OWRB, pursuant to 75 O.S. 2011 § 322, to address Taylor's petition and to make all necessary first-instance findings.

¶23 As quoted above, the OWRB stated in its order that the basis of SCCD's condemnation action was "in order to rehabilitate the dam to meet high hazard design criteria." The OWRB similarly states on appeal that "[SCCD's] reason for the action" was that "the Dam met the 'high hazard' classification and needed to be upgraded to satisfy those requirements."[9] The OWRB also admits on appeal as follows: "It is correct that the Legislature has given the OWRB jurisdiction in the Oklahoma Dam Safety Act, 82 O.S. § 110.1 et seq., to determine hazard classification of dams."[10] See also Heldermon v. Wright, 2006 OK 86, ¶ 13, 152 P.3d 855 (The Legislature has enacted a "statewide comprehensive plan to oversee the use and protection of the public's interest in stream water. In its effort to protect this public interest, the Legislature has provided for the OWRB's involvement in all aspects of stream water use from the Oklahoma Dam Safety Act to appropriation of stream water."). Indeed, § 785:25-3-3 of the OAC provides, in part, as follows:

(a) All dams shall be classified . . . for potential hazards as follows:

. . . .
(2) Hazard-Potential Classification of Dams. The hazard-potential classification of a dam is determined by the downstream risk in the event of a failure, without regard to the physical condition of the dam, as follows:

(A) Low. Dams assigned the low hazard-potential classification are those where failure would result in no probable loss of human life and low economic losses.
(B) Significant. Dams assigned the significant hazard-potential classification are those dams where failure would result in no probable loss of human life but can cause economic loss or disruption of lifeline facilities.
(C) High. Dams assigned the high hazard-potential classification are those where failure will probably cause loss of human life.

(b) Hazard-potential classification subject to regulation and change.

(1) For dams which were inventoried in the National Safety of Dams program authorized under 33 U.S.C. 467 et seq., and for which "Phase I" reports pursuant to said inventory were prepared, the hazard classifications set forth in such "Phase I" reports shall be presumed accurate. If the owner of the dam disagrees with the hazard classification, the owner shall have the burden to show that such hazard classification is inaccurate and should be changed.
(2) At the discretion of the [OWRB], any proposed or existing dam considered to have classification of a high hazard-potential may be subject to regulation regardless of size or impounding capacity.
(3) The hazard-potential classification may change as the area downstream from a dam develops and the dam may be reclassified from time to time under the provisions of 785:25-9-10 and 785:25-9-11.[11]

¶24 Because the condemnation action is based on the dam in question being classified as a high-hazard dam, the hazard-potential classification of the dam is clearly material to the condemnation action. However, it is also clear that the trial court is not the appropriate body to be exercising initial authority regarding the hazard-potential classification of dams in Oklahoma that fall under the Oklahoma Dam Safety Act. As quoted above, the OWRB admits that "the Legislature has given the OWRB jurisdiction in the Oklahoma Dam Safety Act . . . to determine hazard classification of dams." See also 82 O.S. 2011 §§ 110.4-110.5; § 785:25-3-1 of the OAC. Accordingly, such first-instance determinations are properly made at the agency level, and the district court's role, as well as this Court's role, should be limited to reviewing the OWRB's actions in accordance with the OAPA. See 82 O.S. 2011 § 110.11.

¶25 This conclusion "does not impinge on the district court's authority as a court of unlimited jurisdiction . . . ." Arbuckle Abstract Co. v. Scott, 1998 OK 125, ¶ 18, 975 P.2d 879. Rather, as noted in Arbuckle, Okla. Const. art. 7, § 7(a), which grants to State District Courts unlimited original jurisdiction of all justiciable matters, itself provides, in pertinent part, as follows: "The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute." Consequently, the district court's possession of unlimited original jurisdiction "does not mean a district court may preempt or prejudge issues committed for initial resolution to an administrative agency . . . ." Arbuckle, ¶ 18.

¶26 The Arbuckle Court's following discussion, in an analogous context, is instructive:

It is the [Oklahoma Auditor and Inspector] that has been statutorily granted regulatory power over the abstract industry and the initial authority to decide the questions [the parties] sought to resolve concerning the completeness or adequacy of the Clerks' records for purposes of the [Oklahoma Abstractors Law, set forth in Title 74 of the Oklahoma Statutes]. This recognition does not impinge on any authority of the district court and, of course, should [the appellee] be aggrieved by any final order of the [Oklahoma Auditor and Inspector's] Office issued in an individual proceeding covered by the OAPA, [the appellee] would be authorized to seek judicial review of such an order under § 318 of the OAPA. See Double LL Contractors, Inc. v. State, 1996 OK 30, 918 P.2d 34, 37 (parties aggrieved by an administrative agency's final order issued in the context of an individual proceeding are afforded a cause of action for judicial review by § 318 of the OAPA).

Arbuckle, ¶ 19.

¶27 Our conclusion is also consistent with the "exhaustion rule," which provides that "[w]here relief is available from an administrative agency, a plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts." Waste Connections, Inc. v. Okla. Dep't of Envtl. Quality, 2002 OK 94, ¶ 7, 61 P.3d 219 (citations omitted).[12] This rule "allows the agency to apply its expertise and discretion under the statutory scheme the agency itself is charged with administering"; it also "allows the agency opportunity to correct errors in the administrative process," and "allows an administrative agency to compile a record which is adequate for judicial review." Waste Connections, Inc., ¶ 7 (emphasis added) (citations omitted).

¶28 It follows that the issues raised in Taylor's petition before the OWRB were not in fact matters subject to pending litigation in the condemnation action because the OWRB, and not the trial court, has the authority to address such issues in the first-instance. In addition, we disagree with the OWRB's strict interpretation of Taylor's petition - i.e., that the petition constituted solely a request for a declaratory ruling rather than constituting also, or in the alternative, an "attempt to show that the Dam's 'high hazard' classification 'is inaccurate and should be changed' as provided by OAC § 785:25-3-3(b)(1)."[13] "The Supreme Court has long recognized that the content and substance of a filing dictate its meaning and effect rather than its form or title." Admire v. Capital W. Sec., Inc., 2012 OK CIV APP 72, ¶ 30 n.8, 283 P.3d 335 (citation omitted). Although Taylor's petition is entitled "Petition for Declaratory Ruling," the content and substance of the petition, as described above, clearly challenge the high-hazard classification on various grounds, including that if the dam is so classified, that Taylor disagrees with that hazard classification "today."[14]

¶29 We conclude the OWRB erred in finding it could not rule on Taylor's petition under § 785:1-5-6(3) of the OAC, which provides that "[n]o declaratory rulings shall be made where the question presented involves a matter subject of pending . . . litigation . . . ." Therefore, pursuant to 75 O.S. 2011 § 322, we remand this matter to the OWRB to address Taylor's petition and to make all necessary first-instance findings.[15]

CONCLUSION

¶30 Rather than reviewing the OWRB's order to determine whether the OWRB correctly found it could not rule on Taylor's petition, the trial court addressed the issues that OWRB declined to address. Because the trial court's Order exceeds the proper scope of review, we reverse that Order. However, we further conclude the OWRB erred in failing to address Taylor's petition because the issues raised in Taylor's petition were not matters subject to pending litigation and, in addition, Taylor's petition constitutes more than a request for a declaratory ruling because, among other things, it also, or alternatively, challenges the high-hazard classification "today" under § 785:25-3-3(b)(1) of the OAC. Consequently, we remand this matter to the OWRB for further proceedings.

¶31 THE TRIAL COURT'S ORDER IS REVERSED AND THE MATTER IS REMANDED TO THE OKLAHOMA WATER RESOURCES BOARD FOR FURTHER PROCEEDINGS.

RAPP, P.J., and THORNBRUGH, J., concur.

FOOTNOTES

[1] In the amended petition, discussed below, SCCD asserted it had the ability to condemn the property under "27A O.S. § 3-3-105 and 66 O.S. § 57." Title 27A O.S. 2011 § 3-3-105(A)(5)(b) provides that

in all cases when lands or interests therein are deemed by the directors [of a conservation district] to be necessary for upstream flood control purposes to carry out the purposes of the Conservation District Act and which cannot otherwise be acquired, the district shall be vested with the power of eminent domain and may condemn and acquire such lands as provided by the laws of this state governing the acquisition of lands by railroad corporations[.]

In addition, and also under § 3-3-105(A), "a conservation district and the directors thereof shall have the power and duty to: . . . ; 7. Construct, improve, repair, operate and maintain such structures as may be necessary or convenient for the performance of any of the operations or activities authorized in the Conservation District Act[.]"

[2] That is, the trial court awarded summary judgment and, therefore, determined it was undisputed the proposed work was not within the scope of the easements.

[3] Mandate issued in October 2010 after the Oklahoma Supreme Court denied certiorari.

[4] See n.1, supra.

[5] In this regard, Taylor further asserted, among other things, the following:

Visible below the dam . . . , and within its breach inundation area, is a building used temporarily on weekends for gospel singing, and a small residential structure. These buildings are occupied only temporarily. The installation of a warning system has been recommended to notify occupants who are present during a rainfall event if the water level was flowing from the spillway yet still below the crest of the dam.

There is a residential dwelling located further downstream that is thought by SCCD to be within the breach inundation area. However, the dwelling would not be inundated in the event of a breach. Nevertheless, this dwelling could specifically be added to an emergency warning network.

Highway 59 would be inundated before [the dam] overtopped . . . and thus a breach of [the] dam would not alter that impact.
(Citations omitted.)

[6] According to the OWRB, "the District Court did not conduct an evidentiary hearing and received no evidence on the Dam's hazard classification"; rather, "the District Court heard arguments of counsel and then summarily ruled . . . ." Br.-in-chief at 15-16.

[7] Title 82 O.S. 2011 § 1085.10 provides as follows:
In the exercise of all powers and performance of all duties provided in this act, the [OWRB] shall comply with the procedures provided in the [OAPA]. Appeals shall be taken as provided in said act.

Title 82 O.S. 2011 § 110.11 of the Oklahoma Dam Safety Act similarly provides as follows:
Appeals of orders issued by the [OWRB] pursuant to this act [i.e., the Oklahoma Dam Safety Act], except emergency orders issued under subsection B of Section 10 of this act, shall be taken pursuant to Article II of the [OAPA], Sections 205 et seq. and 301 et seq. of Title 75 of [OAPA] the Oklahoma Statutes.

[8] Br.-in-chief at 8. We discuss this issue in more detail below.

[9] Br.-in-chief at 21.

[10] Reply Br. at 5.

[11] OAC § 785:25-3-3 (2010). "Administrative rules are valid expressions of lawmaking powers having the force and effect of law. Administrative rules, like statutes, are given a sensible construction bearing in mind the evils intended to be avoided." Walker v. Grp. Health Serv., Inc., 2001 OK 2, ¶ 27, 37 P.3d 749 (footnotes omitted).

[12] Perhaps more pertinent is the doctrine of primary jurisdiction. In Fent v. Oklahoma Natural Gas Co., 1994 OK 108, 898 P.2d 126, the Oklahoma Supreme Court noted as follows:

The primary jurisdiction doctrine . . . comes into play whenever adjudication of the claim calls for resolution of issues which under a regulatory scheme had been placed within the special competence of an administrative agency. A district court's judicial process will be suspended pending disposition of the issues referred to the administrative body. This court appears to have invoked the primary jurisdiction doctrine without adopting it by name.

Id. ¶ 19 n.26 (emphasis omitted) (citations omitted). The Supreme Court further noted that "[t]he doctrine of primary jurisdiction does not necessarily allocate power between courts and agencies, for it governs only the question whether the court or agency will initially decide a particular issue, not the question whether court or agency will finally decide the issue." Id. (internal quotation marks omitted) (citations omitted). The doctrine of primary jurisdiction appears to have been discussed with approval by the Supreme Court in Walker, where the Court similarly stated:

The doctrine governs the allocation of cognizance between a court and an administrative agency. The doctrine does not necessarily allocate power between courts and agencies. Rather, it governs only the question whether the court or agency will initially decide a particular issue - not which entity will finally decide the cause. The doctrine comes into play whenever adjudication of the claim calls for resolution of issues which, under a regulatory scheme, are placed within the special competence of an administrative agency. When applicable, the doctrine results in judicial process being suspended pending disposition of the issues referred to an administrative body.

Walker, 2001 OK 2, ¶ 36 (footnote omitted). In the present case, however, the doctrine of primary jurisdiction need not expressly "come into play" because the administrative appeal has been consolidated with the condemnation action.

[13] The OWRB states in its Reply Brief that "neither [Taylor] nor any other owner has ever initiated an individual proceeding before the OWRB to attempt to show that the Dam's 'high hazard' classification 'is inaccurate and should be changed' as provided by OAC § 785:25-3-3(b)(1)."

[14] Such an interpretation of the petition is also consistent with § 785:1-5-1 of the OAC, which provides that "[t]he rules, regulations, and modes of procedure contained in this Title" - i.e., Title 785 of the OAC, entitled "Oklahoma Water Resources Board" - "are adopted to simplify procedure, avoid delays, save expense, and facilitate the implementation and administration of the State's water laws," and "shall be given a fair and impartial construction and under no circumstances shall they be constructed to deprive, limit or restrict Board powers, duties and jurisdiction otherwise provided by law." (Emphasis added.)

[15] We note that we must refrain from addressing other matters not yet determined by the OWRB because, "whether in law, equity or on appeal from an administrative body," "[a]n appellate court will not make first-instance determinations of disputed law or fact issues." Bivins v. State ex rel. Okla. Mem'l Hosp., 1996 OK 5, ¶ 19, 917 P.2d 456 (footnote omitted) (emphasis in original). We also decline to address the OWRB's argument challenging the January 2012 order consolidating the condemnation action with the administrative appeal. The OWRB asserts that the consolidation order was "[a]n earlier, ill-advised ruling that contributed to the error of the District Court," and "[t]here is no authority for the consolidation of a condemnation proceeding with any other type of action or proceeding." Br.-in-chief at 18. However, we fail to see how the consolidation of the two cases is directly pertinent to the interests of the OWRB, an administrative agency charged with determining the hazard classification of dams in Oklahoma. This Court will not attempt to determine abstract, hypothetical, or moot questions. Westinghouse Elec. Corp. v. Grand River Dam Auth., 1986 OK 20, ¶ 17 & n.11, 720 P.2d 713. Finally, it is worth noting in this regard that, as mentioned above, SCCD's application to assume original jurisdiction and petition for writ of mandamus and writ of prohibition to enjoin the trial court from consolidating the condemnation action with the administrative appeal was denied by the Oklahoma Supreme Court over three years ago, in May 2012.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2012 OK CIV APP 72, 283 P.3d 335, ADMIRE v. CAPITAL WEST SECURITIES, INC.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 2, 37 P.3d 749, 72 OBJ 147, WALKER v. GROUP HEALTH SERVICES, INC.
Discussed at Length
 1994 OK 108, 898 P.2d 126, 65 OBJ 3215, Fent v. Oklahoma Natural Gas Co.
Discussed
 2002 OK 94, 61 P.3d 219, WASTE CONNECTIONS, INC. v. OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed
 1996 OK 30, 918 P.2d 34, 67 OBJ 790, Double LL Contractors, Inc. v. State
Discussed
 2006 OK 86, 152 P.3d 855, HELDERMON v. WRIGHT
Discussed
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed
 1998 OK 125, 975 P.2d 879, 69 OBJ 4269, Arbuckle Abstract Company v. Scott
Discussed
 1986 OK 20, 720 P.2d 713, 57 OBJ 1155, Westinghouse Elec. Corp. v. Grand River Dam Authority
Discussed
Title 66. Railroads
 Cite
Name
Level

 66 O.S. 57, Eminent Domain and Condemnation Proceedings by Railroads
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 250, Short Title
Cited
 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - Affirmance
Discussed at Length
Title 82. Waters and Water Rights
 Cite
Name
Level

 82 O.S. 110.1, Short Title
Cited
 82 O.S. 110.4, Subjection to Provisions of Act
Cited
 82 O.S. 110.11, Jurisdiction of Appeals of Orders
Discussed
 82 O.S. 1085.10, Procedures and Appeals
Cited